8181

NEWBERRY SAVINGS BANK v. BANK OF COLUMBIA.

1. BANKS—CHECKS.—A bank which takes a check and indorses it for
collection, forwarding it for that purpose through its correspondent,
is in the position of one who takes a check and presents it in person
to the drawee bank for payment.

2. IBID.—IBID.—FORGERY.—One who takes a check in his own favor and
presents it to the bank on which it is drawn for payment, represents
to the drawee bank that the signature is genuine and is responsible
if it turns out that the signature is not genuine and that he took no
precautions to identify the maker.

3. IBID.—IBID.—The rule that a bank should know the signature of its
customers is not available to one who represents to the bank that he

has the check of its customer without having taken precaution to ascertain the identity of the maker of the check.

4. IBID.—IBID.—NEGLIGENCE.—Where one accepting a check has been negligent in having the maker of the check identified, and has lulled the drawee bank into confidence and repose by presenting the check as genuine, he cannot afterwards rely on the position that the drawee bank was negligent in ascertaining the check was a forgery, it having notified him as soon as the fact was ascertained.

Before ALDRICH, J., Richland, May, 1911.   Affirmed.

Action by the Newberry Savings Bank against the Bank of Columbia.   Defendant appeals.

*Mr. D. W. Robinson,* for appellant, cites: *Bank's duty to know signature of its depositors:* 10 Wheat. 344; 7 L. R. A. 851; 55 S. E. 298; 83 Am. St. R. 288; 41 L. R. A. 586. *Effect of restricted endorsement:* 41 L. R. A. 586; 83 Am. St. R. 288; 68 U. S. 166; 1 Dan. Neg. Inst. 552-3; 2 Moss. on Bks. 1000; 1 Moss., sec. 217; 63 L. R. A. 252; 7 L. R. A. 858.   *General rule as to negligence of drawee and payee bank:* 70 L. R. A. 850; 33 Am. Dec. 189; 10 Wheat. 344; 8 Am. R. 352; 23 L. R. A. 617; 96 Am. Dec. 558; 74 S. C. 184; 41 L. R. A. 586; 83 Am. St. R. 287; 51 Am. St. R. 522; 44 L. R. A. 132; 141 Mo. App. 728; 110 Minn. 267. *Equities of parties:* 63 L. R. A. 247; 180 U. S. 285; 66 W. Va. 560.   *Estoppel:* 27 L. R. A. 432; 117 U. S. 96. *Change of condition:* 21 Am. St. R. 453; 63 L. R. A. 247; 2 Moss. 881-2; 10 L. R. A. (N. S.) 66.

*Messrs. Barron, Moore, Barron & McKay,* contra, cite: *Negligence on part of payor bank:* 74 S. C. 184; 21 Am. St. R. 451.   *Presumption and evidence of negligence:* 10 L. R. A. (N. S.) 58; 74 S. C. 184.   *Due notice and demand on discovery of forgeries:* 17 Am. St. R. 899; 33 L. R. A. (N. S.) 188; 74 S. C. 184; 6 L. R. A. 724; 64 Am. Dec. 610; 21 Am. St. R. 450.   *Duty of bank to know signature*

*of depositors:* 2 Morse, sec. 464.   *Change of situation rule:*
10 L. R. A. 49; 21 Am. St. R. 453; 63 L. R. A. 247; 33
L. R. A. 188.

April 11, 1912.  The opinion of the Court was deliv-
ered by

MR. JUSTICE WOODS.   In this case the Circuit Judge
directed a verdict in favor of the plaintiff.   As the main
question involved in the appeal is whether there was any
view of the evidence which would have warranted a verdict
for the defendant, we state the evidence from the defend-
ant's standpoint.

On March 21, 1907, a man who represented himself to be
R. L. Crooks, and who had in his possession a depositor's
passbook, issued to R. L. Crooks by Newberry Savings
Bank, went into Bank of Columbia and asked to have cashed
a check purporting to be signed by Crooks for one hundred
dollars in favor of Bank of Columbia on Newberry Savings
Bank.   Mr. Gibbes, cashier of Bank of Columbia, asked
Mr. Norwood, cashier of Newberry Savings Bank, by tele-
phone, if the check of R. L. Crooks on his bank for one
hundred dollars would be good; and on receiving an affirma-
tive answer cashed the check.   The Bank of Columbia then
endorsed the check, "Pay any bank for account of the Bank
of Columbia—T. H. Gibbes, cashier," and sent it forward
through its correspondent bank.   The Newberry Savings
Bank paid the check on its presentation by the Exchange
Bank of Newberry.   A second check for one hundred and
fifty dollars, dated April 1, 1907, was cashed by Bank of
Columbia and paid by Newberry Savings Bank under like
circumstances.   In May, 1908, more than a year after these
transactions, Crooks, having occasion to go to the Newberry
Savings Bank, the officers of that bank discovered that the
man to whom the Bank of Columbia had paid the money
was not Crooks, and that his name had been forged.   Very
soon after demand was made by Dr. McIntosh, president

of Newberry Savings Bank, on the Bank of Columbia for the repayment of the money, and the demand was refused.

Mr. Gibbes, cashier of the defendant bank, died before the trial; but other officers of the bank who were present and participated in the transactions testified that the drawer of the checks was a stranger, and they were unable to show that any identification was required of him. Notwithstanding this evidence of negligence on its part, the defendant bank contended that the cause should have been submitted to the jury because of the negligence of the plaintiff bank: "(1) In not discovering the forgery more promptly. (2) In not notifying the defendant bank after the first forgery in order that said bank might not have cashed the second or third forgery, and might have apprehended the forger and protected itself. (3) In not having or keeping the genuine signature of its customers, and in not comparing the signature of its customer with such genuine signature. (4) In paying a check which contained a restricted indorsement only for collection without any effort to establish the genuineness of the signature. (5) And that defendant has been misled and has changed its situation for the worse in reliance upon the conduct of the plaintiff."

In fixing the relations and obligations of the parties we first consider the effect of the indorsement, "Pay to any bank for account of Bank of Columbia, S. C." The undisputed proof was that this meant that the Bank of Columbia had not parted with the title to the check, but had only appointed the bank presenting the check its agent to collect. In this respect the case stands, therefore, precisely as if an officer of the Bank of Columbia had gone to Newberry and presented the check as that of R. L. Crooks and demanded and received payment therefor. The case then comes to this: Does the person who has himself taken a check in his own favor, and who himself presents it and demands payment of the bank on which it is drawn, represent to the bank that the signature is genuine, and is he

responsible if it turns out that the signature is not genuine and that he took no precautions to identify the person who signed it?

The person or bank to whom the money is paid, in such circumstances, receives the money of another on the faith of an untrue representation that he has dealt with and received the check from the person whose name is signed to it. The rule that a bank should know the signature of its customers is not available to one who represents to the bank that he holds in his hand the check of the customer, without having taken precautions to ascertain the identity of the person with whom he was dealing. The law is thus stated in *Ford* v. *Peoples Bank,* 74 S. C. 180, 54 S. E. 204, 10 L. R. A. (N. S.) 63n, quoting from *National Bank* v. *Bangs,* 106 Mass. 441: "To entitle the holder to retain money obtained by a forgery, he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee and that the negligence of the drawee was not lessened and that he was not lulled into a false security by any disregard of duty on his (the holder's) own part, or by the failure of any precaution from which his implied assertion in presenting the check as a sufficient voucher the drawee had a right to believe he had taken." This case is much stronger in favor of the drawee bank than the Ford case, for there the bank which received the money did not take the draft from the person who signed it, but from an indorsee in the usual course of business.

All of the authorities cited by appellant relate to the obligation of the payee bank to know the signature of its customers as against a bank not dealing with the drawer, but taking the check by indorsement from others. None of them, and none that we have been able to find, exempt a bank from liability to refund money which it has received on a forged check taken by it directly from the forger. On the contrary, in *Bank of St. Albans*

v. *Farmers Bank,* 10 Vt. 141, 33 Am. Dec. 188, the Court said: "It seems now well settled that a person giving a security in payment or procuring it to be discounted vouches for its genuineness." The same principle is laid down in *National Bank of North America* v. *Bangs,* 106 Mass. 141. The Courts with practical unanimity go at least to the extent of holding that a bank which takes a forged check without taking due care to ascertain its genuineness must refund the money paid to it by the drawee bank. See note to *First National Bank* v. *Bank of Windmere,* 10 L. R. A. 58.

On the same reasoning the defendant cannot avail itself of the position that the plaintiff should have ascertained and given notice long before it did that the checks were not genuine. The defendant had been negligent in failing to have the drawer of the checks identified, and had lulled the plaintiff into confidence and repose by presenting the check as genuine. The plaintiff had nothing to arouse its suspicions or suggest examination afterwards until it actually discovered the forgeries, and it then immediately notified the defendant.

It thus appears that, disregarding all the evidence to which defendant objected and considering only the facts proved or not disputed by the defendant, the plaintiff is entitled to recover. This conclusion makes unnecessary the consideration of the exceptions alleging error in the admission of testimony.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.