GREAT AMERICAN INSURANCE COMPANY v. HOLIDAY MOTORS OF HIGH POINT, INC., AND ROBERT BISHOP.

(Filed 19 May, 1965.)

**1. Appeal and Error § 49—**

   Findings of fact, made by the court in a trial by it after waiver of a jury trial by failure to make apt demand therefor, are conclusive on appeal if supported by evidence.

**2. Appeal and Error § 21—**

   An exception to the judgment presents the question whether the facts found are sufficient to support the judgment.

**3. Banks and Banking § 10—**

   A bank paying a forged check may not recover such payment from the payee unless the payee is at fault in taking or negotiating the paper.

**4. Same—    Evidence held sufficient to show that payee of check was put on inquiry as to whether signature was forgery.**

   Defendant, after ascertaining that its intoxicated customer had no account at the bank in his own name and after ascertaining that there were sufficient funds under the name which the customer said he carried his ac-

count because of marital difficulties, sold the customer a car upon down payment by check, signed in such other name, and the execution of a chattel mortgage, and had an employee drive the customer to the customer's home in the car after defendant had presented the check to the bank and obtained a cashier's check therefor. *Held:* The bank is entitled to recover from defendant the funds paid out upon the forged instrument, and defendant and not the bank must suffer the loss sustained upon repossession and resale of the vehicle, since the loss was sustained as the result of defendant's gullibility and attempt to negotiate a check it knew to be of questionable authenticity.

APPEAL by defendant Holiday Motors from *Olive, E.J.,* August 31, 1964 Small Claims Civil Session of FORSYTH.

Plaintiff, to recover the sum of $500, instituted this small claims action. To support its claim, it alleged: It insured High Point Savings & Trust Company (Trust Company) against loss resulting from forgeries. Defendant Bishop forged the signature of Logan E. Bishop, Jr. to a check for $500 on Trust Company. This check was payable to and cashed by Holiday Motors of High Point, Inc. (Holiday). Holiday was not a holder in due course. It took the check with notice of the forgery. Plaintiff paid Trust Company its loss, and by reason of its payment became subrogated to the rights of trust Company.

Bishop did not answer.

Holiday answered. It admitted it had cashed the $500 check drawn by defendant Bishop on an account carried with Trust Company under the name of Logan E. Bishop, Jr. It alleged it was a holder for value. It admitted plaintiff had become subrogated to any rights which Trust Company had, but denied Trust Company had any rights.

The following is a summary of the court's findings: Robert Bishop, who had been consuming intoxicants, went to Holiday for the avowed purpose of purchasing a new Mercury automobile. Wells, Holiday's general manager, aware that Bishop had been drinking, quoted a price, payable $500 in cash, the remainder to be paid in installments secured by a mortgage on the Mercury. Bishop agreed to Wells' terms, stating he would make the cash payment by check on his account with Trust Company. He asked Wells for a blank check on Trust Company. Wells phoned Wachovia Bank & Trust Company to inquire if it would purchase Bishop's mortgage, securing the deferred portion of the purchase price. Wachovia replied that Bishop's credit was good and it would finance the unpaid portion of the purchase price. Wells then phoned Trust Company to ascertain if Robert Bishop's check for $500 would be honored. Trust Company informed Wells that Robert Bishop did not have an account with it. Wells reported to Bishop that Trust Company said he did not have an account with it. Bishop then told Wells he, Bishop, had forgotten that his deposit in Trust Company

was not in his real name, but in the name of Logan E. Bishop, Jr., a name he had assumed because of marital difficulties. Wells made no inquiry to ascertain if Robert was in fact married. Instead, he called Trust Company and inquired if Logan E. Bishop, Jr. had an account there, and if a check on that account for $500 would clear. He received an affirmative answer to both questions. Bishop's statement to Wells that he had deposited his money with Trust Company under an assumed name was false. He had no money on deposit with Trust Company either in his own name or in any other name. In Wells' presence, Robert Bishop signed a check drawn on Trust Company payable to Holiday for $500. The check was signed in the name of Logan E. Bishop, Jr., as drawer. An officer of Holiday carried this check to Trust Company. He requested that it be certified. The bank informed him that it only certified checks at the request of a depositor, but it would issue a cashier's check for a charge of 15 cents. Holiday's officer endorsed the check, paid the 15 cents, and received in return Trust Company's cashier's check.

Trust Company, when it received the check signed by Robert Bishop in the name of Logan E. Bishop, Jr., did not refer to its signature card to ascertain if, in fact, the check was signed by its depositor, Logan E. Bishop, Jr. When Holiday presented the check, and received in exchange Trust Company's cashier's check, Trust Company had no knowledge of the facts surrounding the drawing of the check.

After the cashier's check was issued, Robert Bishop was driven by Wells in the Mercury to Bishop's home. Bishop was then intoxicated and was assisted to his room by his mother. The Mercury was left parked in front of Bishop's residence. The automobile was not driven by anyone after Wells, acting for Holiday, parked it in front of Robert Bishop's residence. It was, when the forgery was discovered, repossessed by Wachovia and returned to Holiday.

Based on the findings, the court concluded that Holiday's failure to investigate the genuineness of the story told by Bishop, who had to the knowledge of Holiday's managing officer been consuming intoxicants, and in giving credit to the check by its endorsement, led Trust Company to believe the paper was genuine. The failure to disclose the suspicious circumstances attending the drawing of the check constituted bad faith on the part of defendant Holiday. Such bad faith substantially contributed to the success of the fraud through which payment of the $500 was received by Holiday. It amounted to active participation in the forgery committed by the defendant Robert Bishop.

The court concluded that to permit Holiday to retain the $500, under the facts as found, would constitute "unjust enrichment." It en-

tered judgment in plaintiff's favor against defendants for $500 and costs. Holiday excepted and appealed.

*Bencini, Wyatt & Tate for defendant appellant.*

*Womble, Carlyle, Sandridge & Rice by Allan R. Gitter for plaintiff appellee.*

RODMAN, J. Defendant's failure to demand a jury trial, as provided by G.S. 1-539.5, constituted a waiver of that right. The facts found by the court are amply supported by the evidence. They are conclusive and binding on us. *Johnson v. Johnson*, 262 N.C. 39, 136 S.E. 2d 230. The exception to the judgment raises the question: Are the facts found sufficient to support the judgment? The answer is "yes." The rule of law applicable to the facts of this case is well stated in 10 Am. Jur. 2d 573. It is there said:

> "The responsibility of the drawee who pays a forged check, for the genuineness of the drawer's signature, is absolute only in favor of one who has not, by his own fault or negligence, contributed to the success of the fraud or misled the drawee; in other words, the presumption of negligence on the part of the drawee bank paying such forged check is operative to prevent its recovery of the money thus paid only when the one to whom the money is paid is not at fault. To entitle the one to whom payment was made to retain as against the drawee the money received, he must be able to show that the whole responsibility of determining the validity of the signature was upon the drawee, and that the negligence of such drawee was not lessened by any disregard of duty on the part of the holder, or by failure of any precaution which, from his implied assertion in presenting the check as a sufficient voucher, the drawee had the right to believe he had taken. In the absence of actual fault on the part of the drawee bank, its constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude its recovery from one who took the check under circumstances of suspicion, without proper precaution, where his conduct has been such as to mislead the drawee, or to induce it to pay the check without the usual security against fraud. If it appears that the one to whom payment was made was guilty of negligence in not doing something which plain duty demanded, and which, if done, would have avoided entailing loss on anyone, he is not entitled to retain the moneys paid through a mistake on the part of the drawee bank."

The Supreme Court of Massachusetts, in *Danvers Bank v. Salem Bank*, 151 Mass. 280, 24 N.E. 44, said:

"In the usual course of business, if a check purporting to be signed by one of its depositors is paid by a bank to one who, finding it in circulation or receiving it from the payee by indorsement, took it in good faith for value, the money cannot be recovered back on the discovery that the check is a forgery. It is presumed that the bank knows the signature of its own customers, and therefore is not entitled to the benefit of the rule which in cases of forgery permits a party to recover back money paid under a mistake of fact as to the character of the instrument by which the fraud has been effected. This presumption is conclusive only when the party receiving the money has in no way contributed to the success of the fraud, or the mistake of fact under which the payment has been made. In the absence of actual fault on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the drawee or induce him to pay the check without the usual security against fraud. * * * To entitle the holder to retain money obtained by a forgery, he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee, and that the vigilance of the drawee was not lessened and that he was not lulled into a false security by any disregard of duty on his own part, or by the failure of any precautions which from his implied assertion in presenting the check as a sufficient voucher the drawee had a right to believe he had taken."

The statement of law by the Supreme Court of Massachusetts, as quoted above, was quoted approvingly by this Court in *Woodward v. Trust Company,* 178 N.C. 184, 100 S.E. 304. The language used in *Danvers Bank v. Salem Bank, supra,* was, in substance, the language of the Supreme Court of Massachusetts in *National Bank of North America v. Bangs,* 106 Mass. 441, 8 Am. Rep. 349. The Supreme Court of South Carolina, in *Newberry Savings Bank v. Bank of Columbia,* 74 S.E. 615, a case remarkably similar to the present case, quoted approvingly the language of the Supreme Court of Massachusetts, and permitted the payee bank to recover. See also *Louisa Nat. Bank v. Kentucky Nat. Bank,* 39 S.W. 2d 497; *American Express Co. v. State Nat. Bank,* 113 P. 711; *First Nat. Bank v. United States Nat. Bank,* 197 P. 547, 14 A.L.R. 479; Annotation: "Right of drawee of forged check or draft to recover money paid thereon." 12 A.L.R. 1089-1116, supplemented in 71 A.L.R. 337-345 and 121 A.L.R. 1056-1062.

Epitomized, the rule is that the failure of a bank to detect a forgery before paying a check drawn on it protects, against a subsequent demand for re-payment, those and only those, who are without fault in taking or negotiating the paper. This rule was stated in *Bank v. Marshburn*, 229 N.C. 104, 47 S.E. 2d 793, although the facts of that case did not call for an application of the rule.

While there is a lack of unanimity in the decisions with respect to what facts suffice to impose on payee the duty of putting drawee on guard, there can, on the facts of this case, be no doubt with respect to Holiday's duty to inform Trust Company of Robert Bishop's explanation for using Logan's name. Payee knew it was dealing with one who had been drinking intoxicating beverages, one who had no account in his own name in the bank on which he proposed to give a check, and when that fact was called to his attention, made the glib explanation: "I deposited money under an assumed name to keep my wife from finding out about my financial condition." As soon as the general manager of Holiday ascertained that Logan E. Bishop, Jr.'s check for $500 would be paid, he had his secretary fill in a check on Trust Company for that amount, handed the check to Robert Bishop, who signed "Logan E. Bishop, Jr." Wells immediately dispatched the company's business manager to Trust Company to get the check certified, or the cash. Wells testified: "It is not clear to me exactly how long it took for this transaction on this afternoon—the check writing part and going to the bank and all of that was not over 15 minutes and there was some delay in putting the mirror on the car. I was standing there with Robert Bishop the whole time." As soon as Holiday got Trust Company's cashier's check and the mortgage securing the balance of the agreed price, Bishop was driven by Wells to Bishop's home in Archdale, a suburb of High Point. When Bishop reached his home, he was so intoxicated he could scarcely walk. It was necessary for his mother to help him into the house. Wells removed the license tags from the Mercury and left. The car had then been driven five miles. It was not thereafter driven until it was repossessed by the mortgagee.

Holiday argues that it ought not to be compelled to reimburse plaintiff because, as it says, it has been prejudiced by Trust Company's acceptance of the check. It sold the car to Bishop for $3,125. After repossessing, it sold the car for $2,750, thereby sustaining a loss of $375. In addition, it claims that it allowed a car salesman, who had nothing to do with the sale, a commission of $125 for making the sale to Bishop. The answer to this contention is that such loss as Holiday has sustained was occasioned by its own gullibility, and willingness to sell an automobile to one who had been consuming alcoholic beverages.

Since the facts found by the court support the judgment, we find No error.