FRANK PENDERGRASS (WIDOWER) AND RUTH PENDERGRASS (SINGLE), v. E. S. MASSENGILL AND WIFE, MARGARET· T. MASSENGILL, HOME SAVINGS & LOAN ASSOCIATION, SAMUEL F. GANTT, TRUSTEE, RALPH B. MASSENGILL, CONSERVATOR, AND RALPH B. MASSENGILL, GUARDIAN OF E. S. MASSENGILL.

(Filed 3 February, 1967.)

1. **Appeal and Error § 38—**

Exceptions not discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

2. **Appeal and Error § 49—**

Where there is sufficient competent evidence to support a finding of fact by the court, it will be presumed that the court disregarded incompetent evidence· tending to support the same finding.

3. **Same—**

Findings of fact supported by competent evidence are conclusive on appeal.

4. **Cancellation and Rescission of Instruments § 4; Unjust Enrichment § 2—**

The owner, due to mistake, conveyed lot 13 to a purchaser instead of conveying intended lot 15. The purchaser executed a deed of trust. In proceedings to rectify the error the deed of trust was foreclosed and the land bid in by the original owner and the deed of trust discharged out of the proceeds of sale. *Held:* The *cestui*, having been reimbursed only for monies advanced by it, may not be held liable to the original owner for any payment made by him in his endeavor to rectify the error. The same result follows as to the trustee in a second deed of trust, executed by the grantee to the original owner, which was wiped out by the foreclosure.

5. **Same; Mortgages and Deeds of Trust § 1— Court decreeing cancellation of deed for mistake may decree equitable lien in favor of grantee for improvements and amount paid on purchase price.**

The owner, due to mistake, conveyed lot 13 to a purchaser instead of conveying intended lot 15. The purchaser executed a deed of trust. Pursuant to an agreement to rectify the mistake, the purchaser allowed the deed of trust to become in default and to be foreclosed, but, contrary to the agreement, the original owner bid in the property. Upon discovering that the original owner had bid in the property, the attorney for the grantee registered the deed to lot 15 which had been executed by the original owner pursuant to the agreement to rectify the mistake. *Held:* Judgment in the owner's suit decreeing the cancellation of the deed to lot 15 correctly awarded the grantee an equitable lien in the amount of that part of the purchase price paid by the grantee, together with the amount which the improvements made on the land by the grantee had enhanced its value, and the original owner, having brought about the collapse of the plan to rectify the error, is not entitled to credit on the equitable lien for the rental value during the occupancy of the grantee.

APPEAL by plaintiffs from *Hobgood, J.,* at the 6 June 1966 Civil Session of DURHAM.

In their complaint the plaintiffs allege that a deed executed by them, which purports to convey to E. S. Massengill and wife, Margaret T. Massengill, a fee simple estate in a certain lot, hereinafter referred to as Lot 15, is a cloud upon the title of the plaintiffs to such lot. The prayer for judgment is that the alleged cloud be removed from the plaintiff's title, that the plaintiffs be declared the owners of the property free and clear from any claim of the defendants, and that a writ of possession be issued in favor of the plaintiffs.

A jury trial was waived. The court, after hearing the evidence, made detailed findings of fact, drew certain conclusions of law and entered judgment thereon. It adjudged: That the deed for Lot 15 from the plaintiffs to the Massengills is void; that it be removed from the record; that the Massengills have no right, title or interest in Lot 15 except that there be imposed thereon an equitable lien in their favor for $4,431.01 with interest; that the action be dismissed as to the Home Savings & Loan Association and Samuel F. Gantt, Trustee; and that the costs of the action be taxed one-half against Frank Pendergrass and the remainder against the Massengills.

The following is the substance of the material facts found by the trial judge, the numbering being ours:

1. Frank Pendergrass is a widower. Ruth Pendergrass is his unmarried daughter. Mr. Pendergrass originally owned a tract of land which he caused to be subdivided into lots, a plat of which was recorded. He caused a house to be built upon what is now known as Lot 15. He contracted with E. S. Massengill' and wife to sell and

convey to them this house and the lot on which it was situated. The purchase price was $16,000. The plan was that the Massengills would pay $2,000 in cash, borrow $8,500 from Home Savings & Loan Association upon their note secured by a first deed of trust upon such house and lot, and give Mr. Pendergrass their note, secured by a second deed of trust for the balance of $5,500.

2. By mistake of all parties concerned, Mr. Pendergrass executed and delivered to E. S. Massengill and wife a deed conveying to them Lot 13, and the two deeds of trust were drawn, executed and delivered so as to convey Lot 13 as security for the said notes. Lot 13 was then a vacant lot. This deed and the two deeds of trust were placed upon record. Mr. Pendergrass received from the Massengills the $2,000 plus the $8,500 borrowed from the Home Savings & Loan Association, together with the $5,500 note secured by the second deed of trust to Samuel F. Gantt, Trustee. The Massengills moved into the house and made the prescribed monthly payments on the notes secured by the deeds of trust.

3. Some two years later Frank Pendergrass discovered the error and consulted his attorney, Mr. Marshall T. Spears, Jr., in an effort to correct the confusion. It was agreed by all concerned that an exchange of conveyances should be made so as to place all parties in the positions they would have occupied had the original error not occurred. In order to give to the Massengills a lot of the size originally contemplated, it was agreed that a strip would be taken from Lot 14, owned by Miss Ruth Pendergrass, and added to the area upon which the house occupied by the Massengills was located, this combined area being now known as Lot 15. It was further agreed by all concerned: Mr. and Miss Pendergrass would give a deed to the Massengills for Lot 15; the Massengills would give a deed to Mr. Pendergrass for Lot 13, previously conveyed by him to them; the Massengills would execute a new note to the Home Savings & Loan Association and a new deed of trust conveying Lot 15 as security therefor; the Massengills would execute a new note to Frank Pendergrass and secure it by a second deed of trust to Samuel F. Gantt, Trustee; and thereupon the original first and second deeds of trust upon Lot 13 would be cancelled. [*Note:* Had all of these steps been taken, E. S. Massengill and wife would have owned the house and lot they intended to acquire, subject to the intended encumbrances, Frank Pendergrass would have owned, free of encumbrances, Lot 13 which he had intended to retain, the Home Savings & Loan Association and Frank Pendergrass would have held notes secured by deeds of trust upon the property they had contemplated as security for their notes, and Ruth Pendergrass would have given up a strip from the lot owned by her.]

4. A new plat, showing Lots 13, 14 and 15, was prepared and placed on record. Mr. Spears, attorney for Mr. Pendergrass, prepared the contemplated documents. Mr. and Miss Pendergrass executed the deed conveying Lot 15 to E. S. Massengill and wife, leaving it with Mr. Spears upon the understanding that it was not to be delivered until the other papers had been executed, it being the intention of all the parties that the entire exchange of papers be consummated at the same time.

5. Instead of executing the deed, notes and deeds of trust which he and his wife were to execute, E. S. Massengill disappeared. None of the parties knows what has become of him. This made it impossible to carry out the plan agreed upon for the correction of the original mistake.

6. Thereupon Mr. Spears, attorney for Mr. Pendergrass, suggested an alternative plan for correcting the original mistake, which alternative was assented to by all interested parties other than the absent Mr. Massengill. This plan was: Mrs. Massengill, who remained in occupancy of the house, would cease to make payments on the note to Home Savings & Loan Association; thereupon, the Association would request the trustee in the first deed of trust to foreclose it under his power of sale, this being the first deed of trust on Lot 13; at such foreclosure sale the Association would place a bid equal to the balance due it upon the note, plus the expenses of the sale; assuming that it would be the only bidder, the Association would assign its bid to the widowed mother of Mrs. Massengill and the trustee would convey to her Lot 13; she, in turn, would convey Lot 13 to Mr. Pendergrass; Mr. and Miss Pendergrass would then convey Lot 15 to her; she (the mother of Mrs. Massengill) would execute a new note to Home Savings & Loan Association and a deed of trust on Lot 15 to secure such note, and would also execute a new note to Frank Pendergrass for the amount due him and secure it by a second deed of trust on Lot 15; thereupon she (the mother of Mrs. Massengill) would convey Lot 15, so encumbered, to Mrs. Massengill. [*Note:* Had this arrangement been carried out the result would have been that Mr. Pendergrass would have become the owner of Lot 13, free of encumbrances; Mrs. Massengill would have become the owner of the house and lot she and her husband originally contemplated buying, subject to the encumbrances they originally contemplated placing thereon; Home Savings & Loan Association and Mr. Pendergrass would have had notes secured by the same property they originally intended to take deeds of trust upon; and Miss Ruth Pendergrass would have contributed to the settlement the strip of her lot which she had previously agreed to contribute.]

7. Pursuant to this agreement, Mrs. Massengill defaulted in a

payment due upon the note she and her husband had given to Home Savings & Loan Association. Thereupon, the Association instructed the trustee to foreclose the deed of trust upon Lot 13 and such fore-closure sale was duly advertised and held. At that sale the Associa-tion placed upon the property its agreed bid. To the surprise of all the parties, except Mr. Pendergrass, a slightly higher bid was placed by one S. Y. Hargrove, who became the highest bidder and whose bid was not raised within the time allowed by law for an upset bid. Hargrove was the agent of Mr. Pendergrass and placed this bid for his benefit. At the instruction of Mr. Pendergrass, Hargrove as-signed his bid to Mrs. Kathleen P. Elliott, another daughter. Up to that time Mr. Spears, the attorney for Mr. Pendergrass, who had not been informed of his client's plan to have Hargrove bid on the property, was under the impression that Mr. Pendergrass would have the Hargrove bid assigned to the mother of Mrs. Massengill so that the alternative plan for correcting the original mistake could be carried through to its conclusion. Instead of doing so, Mr. Pendergrass paid the amount of the bid ($8,122.92) to the trustee, who thereupon advised Mr. Spears that he would be obliged to convey Lot 13 to Mrs. Elliott. [*Note:* Miss Ruth Pendergrass tes-tified that she, herself, raised the money for the payment of this bid by mortgaging some other properties owned by her.]

8. Realizing that upon such conveyance by the trustee, noth-ing else being done, the title to Lot 13 would be in Mrs. Elliott, the daughter of Mr. Pendergrass, and Mr. Pendergrass and Miss Ruth Pendergrass would still own the component parts of Lot 15, Mr. Spears, for the purpose of protecting the Massengills, placed on record the deed from Mr. Pendergrass and Miss Ruth Pendergrass conveying Lot 15 to E. S. Massengill and wife.

9. Thereupon the trustee under the deed of trust conveyed Lot 13 to Mrs. Elliott. On the same day she conveyed it to Mr. Pender-grass and he and Miss Ruth Pendergrass instituted this action to remove as a cloud upon their title to Lot 15 the deed so placed on record by Mr. Spears.

10. The trustee in the deed of trust paid over to Home Savings & Loan Association, from the proceeds of the foreclosure sale, the balance due upon the Massengill note which was secured by such deed of trust on Lot 13. Thus, that note was paid in full.

11. After his discovery of the original mistake in his deed to the Massengills, and apparently after the original plan for correct-ing that mistake had been evolved by Mr. Spears and approved by all parties concerned, but before the disappearance of E. S. Massen-gill, Mr. Pendergrass, without waiting for the execution of the plan for the correction of the mistake, began to construct upon Lot 13

another house. This he did in reliance upon the assurance by Mr. Spears that the matter would be worked out by the proposed exchange of conveyances and cancellations of deeds of trust. He completed this house on Lot 13 prior to the trial of this action.

12. Mrs. Massengill remained in the house on Lot 15 until a few days after the conveyance of Lot 13 to Mrs. Elliott and the institution of this lawsuit. Thereupon she left the property and has received no benefit from it. [*Note:* Thus, she occupied the house without paying rent or making payments upon the note from October to early February, which was in accordance with the plan agreed upon by all the parties for clearing up the confusion.]

13. Had Mr. Spears known, at any time prior to the completion of the foreclosure sale, that Mr. Pendergrass did not intend to have the Hargrove bid assigned to the mother of Mrs. Massengill so as to carry out the agreement he planned, Mr. Spears would have advised Mrs. Massengill to pay the installments in default upon her note so as to bring about the discontinuance of the foreclosure sale.

[*Note:* At the time this suit was instituted, the result of all these transactions was that the record title to Lot 15, including the strip formerly owned by Miss Ruth Pendergrass, was in E. S. Massengill (assuming E. S. Massengill to be alive) and Margaret T. Massengill, his wife, free of encumbrances, and the record title to Lot 13 was in Frank Pendergrass, free of encumbrances. For Lot 13 Mr. Pendergrass (or Mrs. Elliott, acting for him) had paid out the $8,122.92, which was paid to the trustee as a result of the foreclosure sale, plus the cost of the house he had erected thereon. Mr. Pendergrass had received the following in money; $2,000 from the Massengills at the time of the original transaction; $8,500, the proceeds of the loan from Home Savings & Loan Association to the Massengills; $1,750 (including $500 interest) paid to him by the Massengills on their note secured by the second deed of trust; and, presumably, $100 from the proceeds of the foreclosure sale, this being the amount by which the Hargrove bid exceeded the expenses of the sale plus the balance due on the note secured by the first deed of trust. The Massengills had paid out the following, in addition to the proceeds of their note to Home Savings & Loan Association: $2,000 to Mr. Pendergrass at the time of the original conveyance; $1,750 to Mr. Pendergrass (including $500 interest) on their note secured by the second deed of trust on Lot 13; $3,000 for improvements on Lot 15 (this having been borrowed from First Union National Bank, presumably upon their note secured by a third deed of trust on Lot 13, which, if it existed, has been wiped out by the above foreclosure, the Massengills having paid upon such note a total of $681.01)].

The record discloses that in the interval between the disappearance of E. S. Massengill and the institution of this action, Ralph B. Massengill was appointed Conservator of his properties. As such he was made a party to this action. Thereafter, the parties stipulated that Ralph B. Massengill, guardian for Edward S. Massengill, be made a party in lieu of Ralph B. Massengill, Conservator. The said guardian adopted the answer filed in this action by the Conservator. Process in this action was served by publication upon E. S. Massengill.

*Blackwell M. Brogden for plaintiff appellants.*
*Claude V. Jones for Home Savings & Loan Association.*
*C. Horton Poe, Jr., for Margaret T. Massengill.*

LAKE, J. The plaintiffs' assignments of error Nos. 3, 4 and 5, relating to certain exceptions to the admission and exclusion of evidence, are deemed abandoned, the brief filed by the plaintiffs containing no argument or citation of authority in support of these exceptions or any other reference thereto. Rule 28 of the Rules of Practice in the Supreme Court.

Assignment of error #6 relates to the admission of testimony by Mrs. Massengill. Upon questions proper in form, she was permitted, over objection, to state that the original purchase price agreed upon between Mr. Pendergrass on the one hand and the Massengills on the other was $16,000, of which the Massengills paid "down" $2,000, and that the house on Lot 15 had been completed when they moved into it. There was no error in the admission of this testimony. On cross examination, Mrs. Massengill testified that she had no personal knowledge of the amount of the down payment except for a payment of $100 when they went to look at the house and what her husband had told her. The plaintiffs did not move to strike the former testimony as a result of this admission on cross examination. In any event, the testimony that the house was completed when the Massengills moved in could not be prejudicial to the plaintiffs and there is ample evidence in the record, apart from the testimony by Mrs. Massengill, to support the court's finding that the Massengills, at the time of the original transaction, paid Mr. Pendergrass $2,000, in addition to the $8,500 borrowed from Home Savings & Loan Association. It not appearing that the trial judge rested his finding upon this testimony by Mrs. Massengill, it will be presumed that he disregarded it. *Insurance Co. v. Shaffer,* 250 N.C. 45, 108 S.E. 2d 49; *Bizzell v. Bizzell,* 247 N.C. 590, 605, 101 S.E. 2d 668. There is no merit in assignment of error #6.

Assignment of error #1 relates to 11 exceptions to findings of

fact made by the trial court and set forth in its judgment. We have carefully considered each of these exceptions. Each fact so found is amply supported by the evidence, the allegations of the plaintiffs' own complaint or reasonable and proper inferences and computations based thereon. Many of the findings are in the exact wording of the testimony of Mr. Pendergrass and his witness, Mr. Spears. The parties having waived trial by jury, the findings of fact, supported as they are by evidence, are binding upon this Court on appeal. *Young v. Insurance Co.*, 267 N.C. 339, 148 S.E. 2d 226; *Insurance Co. v. Motors*, 264 N.C. 444, 142 S.E. 2d 13; *Johnson v. Johnson*, 262 N.C. 39, 136 S.E. 2d 230; *Gasperson v. Rice*, 240 N.C. 660, 83 S.E. 2d 665. There is no merit in assignment of error #1, or any portion thereof.

Assignment of error #2 relates to the conclusions of law drawn by the trial court and to the provisions of its judgment entered thereon.

The record discloses no breach of contract, misrepresentation or other wrongdoing by, or any unjust enrichment of Home Savings & Loan Association. It made a loan to the Massengills, the entire proceeds of which were paid over to Mr. Pendergrass. It took from the Massengills a deed of trust upon a lot conveyed to them by him. When he discovered that he had conveyed the wrong lot by mistake, the Association twice acquiesced in plans conceived by his then attorney for the correction of his error. At the request of his then attorney, it caused the deed of trust securing the note held by it to be foreclosed, default having then occurred in the payments upon such note. At the foreclosure sale it placed a bid, as it had been requested by his attorney to do, for the full amount required to discharge the note secured by the deed of trust. It was Mr. Pendergrass, not the Association, who prevented the complete execution of his attorney's plan for the correction of his mistake. There is nothing to indicate that the Association would not have reconveyed Lot 13, as it had agreed with his attorney to do, if he had permitted it to become the purchaser at the foreclosure sale. No doubt, he bid at the sale due to fear that otherwise he would lose the investment made by him in constructing the new house on Lot 13 after his discovery of his original mistake. Be that as it may, the record shows no action by the Association except such as it was requested to take by the plaintiffs' then attorney. Upon Mr. Pendergrass' election to buy Lot 13 at the foreclosure sale, the Association did nothing other than to receive from the trustee that portion of the proceeds of the sale to which it was entitled under the provisions of the deed of trust. The title to Lot 13 now reposes exactly where both plaintiffs wanted

it. Any payment by them to bring about that result was due to their voluntary action without any inducement by the Association.

The plaintiffs brought this action to recover legal title to Lot 15 free from any claim of the Association. They have done so. The record does not indicate that the Association has ever had or claimed any right, title or interest in or lien upon Lot 15. There is nothing in the record to indicate that the Association instigated, brought about, advised or knew about the registration by the plaintiffs' then attorney of the deed conveying Lot 15 to the Massengills.

The plaintiffs have neither alleged nor proved any right of action against Home Savings & Loan Association. There was, therefore, no error in the dismissal of the action as to it and the judgment for the recovery by it of its costs.

The defendant Samuel F. Gantt is neither alleged in the complaint nor shown by the evidence to have had any connection whatever with any of these matters except that he prepared the original conveyances and examined the title to Lot 13 for the Massengills and Home Savings & Loan Association, he was trustee in the second deed of trust given upon Lot 13 to secure Mr. Pendergrass, and he advised Mrs. Massengill concerning the foreclosure. The deed of trust to him as trustee was wiped out by the foreclosure of the first deed of trust, as a result of which Mr. Pendergrass reacquired Lot 13. There is no suggestion that Mr. Gantt knew of, or was responsible for, the original mistake in conveying Lot 13 instead of Lot 15. It is not alleged in the complaint, or otherwise suggested in the record, that Mr. Gantt has ever claimed any right, title or interest in or lien upon Lot 15. The plaintiffs having neither alleged nor proved any right of action against Samuel F. Gantt, there was no error in the dismissal of the action as to him or in the judgment that he recover his costs.

The court having adjudged that the deed conveying Lot 15 to the Massengills is void and having ordered it cancelled upon the record, the plaintiffs have recovered legal title to Lot 15, which is the subject of this lawsuit. The only question remaining is whether the trial court erred in decreeing that the plaintiffs' title thereto be subject to an equitable lien in favor of the Massengills to the amount of $4,431.01.

With reference to the amount of this lien, so imposed, there is ample evidence, apart from the testimony of Mrs. Massengill, that the purchase price of the house and lot agreed upon originally between Mr. Pendergrass and the Massengills was $16,000. He alleged in his complaint that it was "approximately $16,000." The revenue stamps attached to the deed from him to them are consistent with such price, and are in excess of what would have been required had

it been $15,000, as he testified. It is undisputed that, contemporan-
eously with the conveyance to them, the Massengills executed to
Home Savings & Loan Association a first deed of trust and a note
for $8,500, the full proceeds of which were paid to Mr. Pendergrass,
and executed and delivered to him their note for $5,500 secured by a
second deed of trust. The difference between these two deeds of
trust and the agreed purchase price, so established, is $2,000, which
the court found as the "down payment" made by the Massengills
to Mr. Pendergrass. His own testimony is that the Massengills paid
to him on the note secured by the second deed of trust $1,750, in-
cluding $500 on account of interest. The evidence is undisputed that
after they moved into the house on Lot 15, believing they were the
owners of it, the Massengills borrowed an additional $3,000 which
they expended in improvements upon the house and lot. There is
nothing in the record to indicate that these improvements did not
increase the value of Lot 15 and the house thereon by that amount.
Presumably, the note given by the Massengills for this loan was
secured by a third deed of trust on Lot 13, which has been wiped out
by the foreclosure sale at which Mr. Pendergrass, through his nom-
inee, acquired title to Lot 13. However, the liability of the Massen-
gills upon their note would not be wiped out thereby. In computing
the equitable lien decreed by him, the trial judge allowed only the
amount of $681.01 actually repaid by the Massengills on this im-
provement loan. Obviously, the plaintiffs have not been prejudiced
by this computation of the increase in the value of Lot 15, and the
house thereon, by these actions of the Massengills.

The plaintiffs now have the legal title to all of the land they
owned before the original transaction got under way. There is no
legal encumbrance, related to these transactions, upon either lot. To
recover Lot 13 the plaintiffs paid out at the foreclosure sale $8,022.92
(exclusive of $100 which presumably was paid over to Mr. Pender-
grass on his note secured by the second deed of trust).

The Massengills now own neither lot. They have paid to Mr.
Pendergrass on account of these transactions $2,000 as "down pay-
ment," $8,500 borrowed from Home Savings & Loan Association,
and $1,750 on their note given to him, a total of $12,250 in cash. In
addition, they have benefited Lot 15, now restored to the plaintiffs,
by an amount which the trial court conservatively computed at
$681.01. Thus, the curtain falls upon the drama with the plaintiffs
owning all of the land and having received a total of $4,908.09 in
cash and improvements upon their property, in excess of the amount
paid out by them to regain Lot 13. The equitable lien fastened upon
their property by the judgment was for only $4,431.01. Clearly, the

plaintiffs have not been prejudiced by the trial court's calculation of the amount of the lien, if the lien is otherwise proper.

In *Homes, Inc. v. Holt*, 266 N.C. 467, 146 S.E. 2d 434, we held that one who in good faith, and as the result of a reasonable mistake of fact, builds an improvement upon the land of another, may recover from the landowner the amount by which the value of the land has been so increased if the landowner retains the improvement. The case for recovery is even stronger where, as here, the mistake was the result of a misdescription in a deed from the landowner to the improver.

In *Guaranty Co. v. Reagan*, 256 N.C. 1, 122 S.E. 2d 774, Parker, J., now C.J., speaking for the Court, said:

> "It is a thoroughly well established general rule that money paid to another under the influence of a mistake of fact, that is, of a mistaken belief of the existence of a specific fact material to the transaction, which would entitle the other to the money, which would not have been paid if it had been known to the payor that the fact was otherwise, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund."

In *Tomlinson v. Bennett*, 145 N.C. 279, 59 S.E. 37, Connor, J., speaking for the Court, said:

> "The law will imply a promise to repay money received, when there is a total failure of the consideration upon which it was paid. It would be against good conscience and equity to retain it."

To the same effect, see: *Allgood v. Trust Co.*, 242 N.C. 506, 88 S.E. 2d 825; *Sparrow v. Morrell & Co.*, 215 N.C. 452, 2 S.E. 2d 365; *Morgan v. Spruill*, 214 N.C. 255, 199 S.E. 17; *Pool v. Allen*, 29 N.C. 120.

Here, by reason of the mutual mistake of the parties in the description of the land intended to be conveyed to the Massengills, there was a total failure of the consideration for which they paid Mr. Pendergrass the above sums of money. Consequently, they had a cause of action, founded upon equity and good conscience, for the recovery of the payments so made to him, against which he was entitled to set off the sum paid by him to recover Lot 13 (less the $100 thereof which came back to him as holder of the note secured by the second deed of trust), which payment extinguished the note given by the Massengills to Home Savings & Loan Association.

The plaintiffs, having invoked the equity powers of the superior court to remove a cloud upon their title to Lot 15, may be required by the court to do equity. For that purpose, the court was authorized to fasten an equitable lien upon Mr. Pendergrass' interest in Lot 15 to secure the payment by him to the Massengills of that which in equity and good conscience he should pay back to them. 53 C.J.S., Liens, § 4; 33 Am. Jur., Liens, §§ 18 and 21; 27 Am. Jur., Improvements, § 30.

Although Miss Ruth Pendergrass did not receive any of the payments made by the Massengills and it is not shown that the value of that portion of Lot 15, which reverts to her upon the cancellation of the deed, was benefited by the improvements made by the Massengills, she has been a participant in the plans and negotiations for the correction of the original mistake in the deed given by her father to the Massengills. Throughout these negotiations, she has consented to treat all of Lot 15 as if it were owned entirely by Mr. Pendergrass and to the conveying of it to the Massengills so as to correct his original mistake. The record shows clearly that, but for these negotiations so participated in and consented to by Miss Ruth Pendergrass, there would have been no default by Mrs. Massengill in the payment of the note secured by the first deed of trust on Lot 13. Because of such default Mr. Pendergrass has reacquired title to Lot 13 and the house he built thereon after discovering the mistake in the original deed to the Massengills. Miss Ruth Pendergrass is, therefore, estopped to assert that the portion of Lot 15 owned by her should not, for the purpose of the equitable lien, be treated as if it were owned by her father.

The Massengills entered into possession of Lot 15 and the house thereon in good faith, believing that they were the owners thereof. They have instituted no action to rescind their contract or to cancel any conveyance. But for Mr. Pendergrass' departure from the plan evolved by his then attorney, the confusion originating in the mistake in his deed to the Massengills would have been removed and the original contract carried out, with only such modification as was made necessary by the disappearance of E. S. Massengill. Mrs. Massengill moved out of the house as soon as practicable after the plaintiffs made it clear that they did not intend to carry out the plan, which she had been requested by their then attorney to follow, and which she had followed. The plaintiffs, having brought about the collapse of that plan, are not in a position to assert that in equity and good conscience the Massengills should now be held liable for the rental value of Lot 15, and the house thereon, during their occupancy thereof. There was, therefore, no error in the failure of the court to subtract such rental from the amount of the equit-

able lien fastened by the judgment upon Lot 15 in favor of the Massengills.

Affirmed.