T. A. SIMPSON et ux., appellees, v. L. V. BOSTWICK et al.,
appellants.

No. 49076.

(Reported in 80 N.W.2d 339)

January 15, 1957.

Stuart & Stuart, of Chariton, for appellants.

Robert Jackson and Jim I. Myerly, both of Des Moines, for appellees.

LARSON, J.—Under a written agreement executed in California January 24, 1950, plaintiffs T. A. Simpson and Lola E. Simpson deeded a farm located in Appanoose County, Iowa, to defendants L. V. Bostwick and Miriam K. Bostwick on January 31, 1950. There are other defendants, but when referred to herein these are the parties so designated. In part, the agreement provided as follows:

"Parties of the first part, Thomas A. Simpson and Lola E. Simpson, agree to exchange 375 acres in the County of Appanoose, State of Iowa, to wit: [farm description] * * * This property free and clear of all other encumbrances except a loan on real estate of $8800, the original amount of which was $10,000, payable $300 per year on the principal, plus 4½% interest. Next payment due March 1951—this year's taxes paid.

"For the property known as the Woodruff Trailer Park and Apartments at 15717 Woodruff Avenue, Bellflower, California, which is at the present time in litigation between L. V. Bostwick and James R. Carter, who are equal partners at this time. At the close of litigation, L. V. Bostwick and Miriam K. Bostwick are to transfer title to the above mentioned property to Thomas A. Simpson and Lola E. Simpson, subject to an indebtedness of approximately $28,000; * * *

"Simpson will not receive any income from said property or be subject to any payments on said property until title is delivered. All payments are to be up to date, including taxes, at the time title is delivered.

"It is further agreed that Thomas A. Simpson and Lola E. Simpson give immediate title to the farm to L. V. Bostwick and Miriam K. Bostwick; Mr. Bostwick agrees to advance $2500 to be returned to him in time to close his litigation on the Trailer

Park. In the event Mr. Bostwick cannot deliver title to said property, then this $2500 is to be used as rent on the above farm for the year 1950, ending March 1951. If for some cause Bostwick cannot deliver title to the Woodruff Trailer Park and Apts., then he is to deed back the farm to Thomas A. Simpson and Lola E. Simpson. Both parties agree to transfer insurance."

Plaintiffs' farm at the time was under foreclosure due to some arrearages. While there was some dispute as to whether defendants were aware of the foreclosure and arrearages when entering the agreement, we believe that under the record the trial court's determination that it was known or acquiesced in before accepting the deed was justified. On January 31, 1950, the date the deed was executed, defendants paid plaintiffs only $500 of the agreed $2500. A few days later they sent the $1981.14 via their representative to Iowa to cover the arrearages and reinstate the mortgage upon the Iowa farm. Mr. Bostwick's instruction of February 5, 1950, to complete the reinstatement of the mortgage if it could be "straightened up for not more than $2500" is quite persuasive. The trial court found defendants were aware of the situation and retained the $2000 on the 31st of January to cover the approximate arrearages. It pointed out, as defendants made no effort toward obtaining reimbursement for the $1981.14 actually paid for that purpose, the inference was strong that defendants knew of and acquiesced in that transaction. The record discloses plaintiffs themselves had made an effort to comply with the agreement and to reinstate the mortgage for $2000 prior to defendants' payment, but for personal reasons were unsuccessful. It thus appears that defendants' subsequent attempt to accomplish the same result, as a new owner, was successful.

Plaintiffs contend the $500 plus the $1981.14 account for the $2500 advancement under the agreement. Defendants' contention was that $2000 had already been advanced plaintiffs under several loans and that the $1981.14 was a necessary and unexpected additional advancement. The trial court held no substantial evidence was introduced to prove these alleged prior loans, rejected that contention, and accepted plaintiffs' explana-

tion of that transaction and their account of the agreed advancement.

Prior to March 1, 1950, defendants took possession of the Iowa farm by placing thereon as tenants a relative, W. F. Bostwick and his wife, also listed as defendants herein, and by them continued in possession until removed therefrom by the decree of the trial court March 1, 1956. Although defendants failed to obtain title to the trailer park before or at the referee's sale as contemplated in the agreement, and retained possession of their part of the proceeds of that sale, they refused plaintiffs' demand on April 6, 1951, that the farm be deeded back to them as per the agreement. The trial court held such failure breached the agreement, and that possession and title from that time on was wrongfully withheld from the plaintiffs.

There were charges and countercharges of fraud and misrepresentation, lack of good faith, etc. made by each party, but a careful examination of the record, we think, sustains the trial court's rejection of those allegations. True, we try this matter de novo, but the trial court was in the best position to determine the credibility of the witnesses, and we are satisfied there was insufficient proof to justify a finding of false representation, fraud, or even mistake. Considerable importance is given the testimony of Marvin Wood, Mr. Bostwick's brother-in-law, by the court. He testified he visited the farm the latter part of January 1950, at defendant Bostwick's request, and gave him a report by phone. Wood said: "Well, I tried to tell him like I saw it." Defendants' actions thereafter, including the money advanced to clear the arrearages, do not sustain their claim of fraud and misrepresentation. They did not then complain or make demand on plaintiffs due to the revealed facts. The element of reliance is also totally lacking. It further appears, if there was any misrepresentation or misunderstanding, the deal was ratified by defendants' subsequent affirmative acts. Armstrong v. Breen, 101 Iowa 9, 69 N.W. 1125; Steckel v. Million, 210 Iowa 1139, 231 N.W. 387; Gipp v. Lynch, 226 Iowa 1020, 285 N.W. 659; 37 C. J. S., Fraud, section 37, page 284.

Predicated upon a determination that title to the farm should be restored to plaintiffs, the trial court determined that an

accounting was necessary to settle the various claims and counterclaims arising out of the relations of the parties during that period. It was undisputed that defendants had loaned plaintiffs $500 on a note on May 5, 1950, which had not been paid; that defendants had paid off the entire mortgage on the farm and had paid the taxes each year when due. Defendants further introduced evidence that many costly improvements were made upon the farm during the period they were claiming title and were in possession of the farm. On the other hand, plaintiffs introduced evidence as to the rental value of the farm from March 1, 1951, to March 1, 1956. Judgment was entered setting aside the deed of January 31, 1950, and quieting title to the farm in plaintiffs. Under the accounting defendants were granted a judgment of $616.16 against plaintiffs and possession of the farm was given plaintiffs as of March 1, 1956, with a lien established against the farm for defendants' judgment. Costs were taxed to defendants under other appropriate orders of the court.

Defendants enumerate seven propositions as a basis of their appeal to this court. We shall consider each of them herein.

I.   Defendants contend that although this case was brought and tried as an action in equity, it is in fact an action at law to recover damages for the breach of a written contract to exchange real property; that the plaintiffs are therefore not entitled to have the deed set aside for the reason that no fraud, mistake or accident was charged or proven, and that therefore plaintiffs' recovery, if any, should be the difference in the value of the equities in the properties at the time of the breach, which amount would fully compensate the plaintiffs for their loss by not having the contract fully performed.

■     Plaintiffs point out, and we think correctly, that this contention comes too late. There were no objections by the parties to the forum below and the case was fully tried in equity. Whether the cause stated in the petition discloses a case properly triable in equity we need not consider, when the action so brought upon that theory is tried without objection. It will then be treated as one of equitable jurisdiction on appeal to this court. Wait v. Mystic Workers of the World, 140 Iowa 648, 119 N.W. 72; Reiger v. Turley, 151 Iowa 491, 131 N.W. 866; Steltzer v.

Chicago, Milwaukee & St. Paul R. Co., 167 Iowa 464, 149 N.W. 501. There is, however, an aspect of specific performance in this action, for plaintiffs are demanding the return of their farm as provided in the agreement, plus, of course, the prayer to quiet title in them. In addition, as heretofore indicated, we believe the facts related justify a court of equity in setting aside this deed.

██ The remedy of specific performance, of course, is an equitable remedy governed by equitable principles, but one coming into a court of equity for specific performance must be prepared to show that there is equity and good conscience in support of his claim to relief. Reiger v. Turley, supra; 49 Am. Jur., Specific Performance, section 6, pages 10, 11. We therefore examine plaintiffs' claims with such in mind, and re-examine the accounting feature to determine for ourselves the parties' just compensation, if any. According to the record, which incidentally is much too large and detailed, every fact necessary to determine the rights of the parties appears to have been more than fully developed in the trial. The rule is too clear to require citation, that once equity has obtained jurisdiction of a controversy it will determine all questions material or necessary to accomplish full and complete justice between the parties, even though in doing so it may be required to pass upon some matters ordinarily cognizable at law. Johnson v. Carter, 143 Iowa 95, 120 N.W. 320; Clinton v. Shugart, 126 Iowa 179, 101 N.W. 785; Lovrien v. Fitzgerald, 245 Iowa 1325, 66 N.W.2d 458; 19 Am. Jur., Equity, section 127, page 126.

██ II. Defendants' second proposition is that if the deed is set aside, defendants should receive full credit for all moneys paid by them on the mortgage, for all interest, taxes, costs and expenses of improvements to the farm, and should have a lien established against the land for these amounts. The trial court allowed credit to defendants for all moneys paid by them on the mortgage plus interest, and for the taxes paid on the farm plus interest, but denied any sums for repairs, improvements or supplies furnished by defendants while in possession of this farm. Plaintiffs contend such expenditures were not made in good faith and so should not be considered as their liability. In support of

this contention they cite Austin v. Barrett, 44 Iowa 488, in which we held a disseizor wrongfully holding possession and attempting to destroy plaintiffs' title is not entitled to contribution from plaintiffs for improvements made upon the land, and Rippe v. Badger, 125 Iowa 725, 729, 101 N.W. 642, 106 Am. St. Rep. 336, which also held a disseizor was not entitled to contribution for improvements. It occurs to us, however, the record presented does not disclose that defendants were at all times wrongfully withholding possession or claiming title. At least for the period of one year, clearly contemplated by the written agreement, defendants were rightfully in possession. Until the actions of defendants became wrongful, reasonable and necessary repairs or improvements may be presumed to have been made in good faith. Here there was no substantial proof to the contrary. Under the record, improvements made after proper notice or demand by plaintiffs for a return of the title and possession may well be regarded as not having been made in good faith. Welles v. Newsom, 76 Iowa 81, 40 N.W. 105; Parsons v. Moses, 16 Iowa 440.

Defendants complain of plaintiffs' failure to return the $2500 at the time they bid upon the trailer court at the referee's sale, but there was substantial evidence plaintiffs were ready to do so had defendants' bid been sufficient. On the other hand defendant Bostwick stated: "I felt that was the value of the property" when asked why he did not bid higher than $39,900 for the trailer court. It was also at that time defendants determined not to carry out the express intent of the agreement and reconvey the farm to the plaintiffs, nor could they then convey the trailer court as agreed.

Defendants-appellants, of course, sought to recover for the improvements by way of affirmative relief in their filed counterclaim. Up until April 6, 1951, when it became clear they could not complete the exchange because another obtained the title to the trailer court, and plaintiffs demanded a performance of the agreement to deed back the farm, moneys expended for just and reasonable repairs and improvements required for good farm husbandry should as a matter of justice be allowed. By the terms of the agreement plaintiffs, as landlords, were then to be compensated for that period by retaining the advanced $2500.

From the record we find such items as a pump, fencing, glass, cement, lumber, etc., plus the items of seed, lime and fertilizer, with interest at 5% from March 1, 1951, amounted to $926.56. These expenditures were all made prior to April 6, 1951. Reasonable and necessary repairs and improvements on real property made in good faith are recoverable in a quiet title action by the owner. Rainsbarger v. Rainsbarger, 208 Iowa 764, 224 N.W. 45; Wilder v. Conlon, 239 Iowa 187, 30 N.W.2d 764; chapter 560, Code of Iowa 1954. To the extent of this proven sum of $772.13 with 5% interest, defendants should be allowed a credit in the accounting.

On the other hand, we are satisfied all improvements as such made after April 6, 1951, which the trial court held were not made in good faith and therefore were not recoverable in this equitable action, are not validly established counterclaims herein. Defendants were then wrongfully withholding plaintiffs' property, and as disseizors could not gain by their wrongdoing, nor could they, having that knowledge, cause and incur expenses or hardships upon the rightful owners. They are not entitled to be made whole as to these sums. Justice and equity, resorting to the facts and circumstances of such a case, will not so burden plaintiffs unless a very strong showing is made as to defendants' good faith and fairness. Such does not appear herein. The disclosed facts and circumstances of each case must, of course, govern the right of recovery in equity cases of this kind. Lindt v. Uihlein, 116 Iowa 48, 89 N.W. 214; 42 C. J. S., Improvements, section 7(a)(b), pages 432, 433, 434.

III. As a third proposition defendants contend in no event are the plaintiffs entitled to recover anything as rent for the farm for the years defendants had possession thereof, for the reason that there is no competent evidence to show the income from this farm during that period upon which a recovery could be based. The trial court reviewed the evidence introduced by plaintiffs and concluded that it justified a finding that the witness Langfitt was competent and his opinion as to the reasonable rental value of the land from March 1, 1951, to March 1, 1956, was proper. While the basis of his opinion was not entirely satisfactory, being based upon his inspection of the land, con-

sultation with government soil reports, and his knowledge of the average production of lands in the county, and upon a crop-share rental basis common in the locality, and while the testimony was that the farm had been changed to a stock farm usage, the trial court's conclusion that this opinion afforded the most reasonable basis available to determine the fair rental value of the farm and was not merely speculative in nature, was proper.

Though we agree in principle with that determination, we note in the court's allowance no credit was given for the reasonable and necessary landlord expense in keeping the land in a proper condition to produce that income. The trial court did not allow as an offset the sums Langfitt testified would be required by good husbandry to earn that rental. This may have been merely an oversight, for it is clear from the chart (Exhibit P-7) the witness took into consideration such expenses. We find in the record that Langfitt estimated such expenses for 1951 at $698; 1952, $783; 1953, $723; 1954, $698; and for 1955, $633. These sums should have been credited against the gross rental for those years. In other words, the reasonable rental for 1951 should have been $1942.40, not $2640.40; in 1952, $1778.10, not $2561.10; in 1953, $1398.80, not $2121.80; in 1954, $1875.60, not $2573.60; and in 1955, $1852.50, not $2485. The rental value testimony should be taken as a whole and the opinion considered as the net rental to the owner such as would be just and equitable and make him whole as to these necessary expenditures. The gross income per year, considered in the judgment below, would not accomplish this end, because without the practice of good husbandry and the usual co-operation of the landlord, no such income could be expected. Using the revised figures plus 5% interest, we arrive at the sum of $9736.26 as a valid rental claim, not $13,468.97.

IV. The fourth proposition relating to the testimony given as to the gross income on a crop-share basis without credit for just and reasonable expense items to the landlord, we have just discussed with our conclusions thereon. The revised accounting now discloses credits due defendants in the sum of $15,012.49 and the credits due plaintiffs in the sum of $9736.26, or a balance of $5276.23 in defendants' favor.

248

V.   The fifth proposition relates to a contention that plaintiffs were shown to be guilty of false and fraudulent representations as well as concealment of material facts which induced the agreement. As we have previously indicated, we shall not take the time to go minutely into these allegations and arguments, but will say we are abidingly satisfied with the findings and conclusions reached by the trial court in denying these contentions. Smith v. Redmond, 134 Iowa 70, 108 N.W. 461.

VI.   Defendants' sixth proposition relied upon for reversal relates to a claim of laches. They now contend plaintiffs are estopped to prosecute this action for their delay in asserting this claim and in permitting defendants to expend thousands of dollars in improving the farm under a claim of ownership well known to plaintiffs. It is quite true that laches is a defense in equity, but the doctrine will be applied only where it would be inequitable to permit recovery or is clearly demanded in the interest of justice. Jennings v. Schmitz, 237 Iowa 580, 20 N.W.2d 897; Gord v. Iowana Farms Milk Co., 245 Iowa 1, 60 N.W.2d 820; Atkin v. Westfall, 246 Iowa 822, 69 N.W.2d 523, and cases cited therein. Here, to permit defendants to keep the land wrongfully withheld from plaintiffs after a demand, under the claim of laches, would be to place a premium on the wrongful acts of the defendants. Defendants were not under a mistaken impression that they were the rightful owners of the farm. Plaintiffs, on the other hand, had commenced an action for specific performance in Appanoose County in 1951, but as personal service was not made on defendants, it was dismissed by the court for want of prosecution in 1953. Shortly thereafter, and long before the Statute of Limitations could run, this action was commenced. Thus no sufficient facts were revealed to indicate bad faith by the plaintiffs, and clearly defendants were not making these improvements unaware of plaintiffs' claims. Again the circumstances of each case determine whether a court of equity will grant relief upon the claim of laches. We conclude they do not disclose a sufficient basis for that action in this case.

VII.   In the last and final proposition defendants contend the trial court erred in not granting a new trial because of newly discovered evidence. The basis of this claim relates to defendants'

counterclaim for $2000 they allege was loaned to plaintiffs at various intervals between October and December 1949, a claim which the trial court rejected as inconceivable for various reasons not related to the evidence which defendants now believe important to that issue. It held that defendants produced no documentary proof of such loans, and the explanation of such laxity by them seemed without substance. Plaintiffs had contended they did not meet or know defendants until January 1950. As a basis for a new trial defendants now produce affidavits of three witnesses that would contradict this plaintiff testimony.

■ Much discretion is permitted the trial court in refusing or granting a new trial, and while we will more readily review a denial than a granting, we find herein no persuasive basis for granting such new trial. See Wilbur v. Iowa Power & Light Co., 223 Iowa 1349, 275 N.W. 43; Danner v. Cooper, 215 Iowa 1354, 246 N.W. 223; Campbell v. Campbell, 129 Iowa 317, 105 N.W. 583.

■ ■ The rule is quite clear, we think, that in order to be successful in such a motion for a new trial based on newly discovered evidence, such evidence must appear to be such as would be quite influential in determining the result of the trial. Dobberstein v. Emmet County, 176 Iowa 96, 105, 155 N.W. 815; Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327, and cases cited therein. Such evidence at best would scarcely raise even a weak inference that such sums as claimed had been loaned plaintiffs and were a part of the $2500 advancement under the contract. The trial court correctly denied a motion for a new trial, for such testimony would not relate directly to the alleged loans but only to an impeachment of plaintiffs' statement of their acquaintance with defendants. At best it would have been but cumulative or impeachment evidence, and even if accepted would not produce any different result.

It follows from what we have said that the judgment of the trial court must be affirmed with the exception that defendants' judgment should be increased from $616.16 to the sum of $5276.23. As so modified, the judgment is affirmed.—Modified and affirmed.

All JUSTICES concur.