In re Guardianship of Anna M. Oleson.

Mildred A. Watts, guardian, et al., appellants, v. Farmers National Company et al., appellees.

No. 52269.

November 15, 1966.

Alex M. Miller, of Des Moines, for appellants.

Willard M. Freed, of Gowrie, and Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellees.

BECKER, J.—Plaintiffs were common owners of 139 acres of unimproved land in Webster County. Defendant Sidney J. Danielson owned an adjoining tract containing 96.7 acres, which had farm buildings on it. For a number of years the two pieces had been rented and worked as one farm. This had been accomplished by plaintiffs leasing their 139 acres to Danielson who in turn rented it to the actual farm tenant.

In 1961 Danielson hired defendant Farmers National Company, a farm managing concern, to lease the farm to new tenants, look after accounting and see that correct cropping practices were followed. By correspondence to Mr. Alex Miller, attorney for plaintiffs who handled the entire matter for them, the company suggested that the necessary lease between plaintiffs and Danielson be handled directly. This was done. Before the lease was actually signed by all parties, but after advice from plaintiffs' attorney that the lease would be signed, Farmers National, as agents, rented the entire farm to tenants Riedesel on October 17, 1961. Plaintiffs' lease to Danielson was dated October 7, 1961, but did not reach plaintiffs' attorney until about November 3, 1961. The lease called for $2500 cash rent payable January 1, 1963.

Shortly after the leasing matter was settled and some time prior to January 16, 1962, Danielson authorized Farmers National to try to sell his 96.7 acres. The company sought and received permission to try to sell plaintiffs' 139 acres. All parties contemplated that the two pieces would be offered together. Plaintiffs' attorney applied for and received court permission for

the lease, and later for the farm sale.

On March 8, 1962, Farmers National notified plaintiffs' attorney that they had an offer from defendant Gross of $49,345 for plaintiffs' property. The offer was conditioned on buyer's ability to buy the Danielson property. The letter of transmittal contained the following paragraph:

"Since you have already received the $2,500.00 from Mr. Danielson for the 1962 lease, the purchaser is taking credit for that amount and will expect to pay the 1962 taxes payable in 1963."

The offer itself contained the following pertinent parts:

"I agree to pay for said premises the total sum of Forty-nine Thousand Three Hundred Forty-five and no/100 ($49,345.00) Dollars on the following terms:

"$2,000.00 cash, earnest money herewith.

"$2,500.00 cash paid to Sidney Danielson for assignment of 1962 lease.

"$44,845.00 cash on delivery of warranty deed to me on or before December 15, 1962. * * *

"Purchase subject to 1962 lease and possession by Gerald Riedesel.

"I am to pay the taxes beginning with the year 1963, payable in 1964. I am to have possession of said premises on or about December 15, 1962. Subject to the rights of the tenant under his lease. Buyer to pay 1962 taxes payable in 1963. Robert Gross Purchaser."

Plaintiffs' attorney, Mr. Miller, immediately replied to this offer with the following:

"We acknowledge your letter of March 8, 1962 and enclosed Proposition to Purchase Land.

"There is one slight error in your letter, wherein you state we have received $2,500.00 from Mr. Danielson for the 1962 lease.

"Our records show that Sidney Danielson entered into a lease with our clients on September 27, 1960, leasing the Webster County farm from March 1, 1961 to February 28, 1962 for $2,500.00 payable January 1, 1962, which has been paid.

"On October 7, 1961, Sidney Danielson entered into a lease from March 1, 1962 to February 28, 1963 for $2,500.00 payable

January 1, 1963. This item has not been paid, therefore Mr. Sidney Danielson is not entitled to this amount for an assignment, but our clients are entitled to the $2,500.00. We trust you can correct your records accordingly.

"We will submit the offer to our clients and advise you of their decision."

Farmers National replied:

"Thank you for your letter explaining the $2,500.00 cash payment for rental and I now understand that the 1962 rental payment has not yet been made, in fact it's not due until January 1, 1963.

"It is noted that you are submitting the purchase offer to your clients and will advise us of their decision."

Mr. Miller, after consulting his clients, drew a red line through the "$2,500.00 cash paid to Sidney Danielson for assignment of 1962 lease", changed the figure "$44,846.00" to "$47,-345.00" and signed the acceptance as plaintiffs' attorney and agent on March 23, 1962. The offer as changed was later initialed by Mr. Gross. No further mention of the lease money was made until after the transaction was closed on December 12, 1962. Plaintiffs' attorney, Mr. Miller, Mr. Gross as buyer and representatives of Farmers National were all present at the closing. Apparently all parties agreed on all terms but none mentioned the lease money.

On December 21, 1962, Mr. Miller wrote Mr. Danielson to remind him that he expected the $2500 rent to be paid promptly on January 3, 1963. Danielson answered a second more insistent letter dated January 8, 1963, denying liability and referring Mr. Miller to Mr. Gross and Farmers National as he had subleased to Gross and Gross got the 1962 crop. Both Farmers National and Gross take the position that the 1962 rent was paid as part of the sale transaction as reflected in the foregoing contract and correspondence.

I. An undivided portion of plaintiffs' property was owned by individuals whose affairs were handled under guardianship. Therefore, all leases and deeds affecting their interest had to be and were court approved. Apparently because of this situation this case was instituted and tried in probate without objection.

While this action seeking damages on the grounds of fraud would normally be an ordinary proceeding (at law), Watson v. Bartholomew, 106 Iowa 576, 76 N.W. 858; Friedman v. City of Forest City, 239 Iowa 112, 30 N.W.2d 752; Newton v. Grundy Center, 246 Iowa 916, 70 N.W.2d 162, we now have the new probate section, Code, 1966, section 633.33, which provides that with certain exceptions not material here all probate actions are to be tried in equity. It is difficult to detect from the record whether the parties tried this as a law case or an equity case, we conclude that it was treated as an equity matter. We, therefore, review the case de novo. O'Dell v. O'Dell, 238 Iowa 434, 26 N.W.2d 401; Simpson v. Bostwick, 248 Iowa 238, 80 N.W.2d 339. This conforms both with the dictates of the Probate Code as now in force and the apparent action of the parties.

    II. The facts have been necessarily foreshortened. The record contains much additional detail concerning the events leading up to the transaction none of which is determinative. It also contains a great amount of detail as to letters between the parties after the transaction, none of which is helpful and most of which is inadmissible. Substantial space is devoted to mistakes by Farmers National in description of the property (combining both parcels in one offer, later corrected), assumption that Danielson had paid the rent (corrected by Mr. Miller before the transaction was complete) and claimed wrongful renting of the property before the plaintiffs' lease was in Farmers National's possession. While all of these discrepancies show errors on the part of Farmers National, none really affects the outcome here.

Mr. Miller did not see the papers leading up to the Danielson sale before the transaction was complete nor did he ask to see them. There is no evidence that he was denied access to information before the sale was finally consummated.

We have carefully compared the two offers. They are similar but not identical. One difference is that the Danielson lease contained the following line "Current lease? With Gerald Riedesel to be assigned to the buyer." The offer to plaintiffs read "Current lease? Purchase subject to 1962 lease and possession by Gerald Riedesel." This difference is understandable since the Danielson offer provided for $2500 to be paid on assignment of the 1962

lease of plaintiffs' 139 acres and the offer to plaintiffs took credit for $2500 presumed to have been paid for an assignment of the lease. Perhaps the words used in the Danielson offer would have better served to alert Mr. Miller to offerer's intention to buy the 1962 lease rights, but we think both offers, particularly when examined with Mr. Miller's letter and changes showed an intent to buy the owners' 1962 lease rights for the amount offered.

Mr. Gross' offer to plaintiffs clearly contemplated a purchase which would include the $2500 1962 rent as part of the purchase price. Whatever might have been plaintiffs' intent, the deletion of the line concerning the rent having been paid and the addition of $2500 to the remaining balance to be paid at closing, indicated the offer was being accepted as made, but the $2500 was to be taken care of by direct payment to plaintiffs. The offer admits of no other interpretation than that the $49,345 was to be made up in part of the $2500 1962 rent. The acts of plaintiffs and their attorney, coupled with his correspondence *before* closing confirmed that interpretation. Mr. Miller's letter of transmittal enclosing the signed offer (as changed by him) stated:

*"Our clients have decided to accept the offer of Robert Gross.* We enclose your Proposition to Purchase Land and copy, which the writer has signed as attorney and agent for Amanda W. Rudebeck, Louise Rudebeck, John W. Rudebeck, and Mildred A. Watts, Guardian of Anna M. Oleson." (Emphasis supplied.)

We will not extend this opinion by an analysis of the amounts offered in the Danielson offer and this offer. Suffice to say that a careful study of the record indicates that Gross paid exactly what he offered. The only change due to the alterations on Gross' offer was that the $2500 was paid direct on the contract, not channeled through Danielson.

III. Plaintiffs' charge that both defendant Gross and defendant Farmers National "unfairly, unlawfully, illegally and fraudulently concealed from the plaintiffs the infamous conspiracy to defraud plaintiffs on the cash rent of $2500."

In Wyckoff v. A & J Home Benevolent Assn. of Creston, 254 Iowa 653, 657, 658, 119 N.W.2d 126, we said:

"Fraud cannot be presumed but must be affirmatively proved by the one who relies on it either for the purpose of defense or

attack. It must be established by a preponderance of the evidence by proof that is clear, satisfactory and convincing—such as to overcome the presumption in favor of fair dealing [cases cited]. * * *

■ "Fraud is of various kinds and may be committed by a suppression of the truth as well as by the suggestion of falsehood [cases cited]."

Plaintiffs cite Githens v. Johnson, 195 Iowa 646, 649, 192 N.W. 270, as follows:

■ "It is elementary that an agent must be loyal in transacting the business of his principal. An agent is under the legal duty to fairly and fully disclose all facts within his knowledge germane to the subject-matter of the agency, and in the strictest good faith impart to his principal all information that would control, or have a tendency to influence the conduct of the principal. It is his duty to secure the highest price possible. It is his duty to inform his principal as to the true value of the land and to communicate any offers made therefor. He occupies a position of confidence, and must bear true allegiance to his principal. The principal has a right to rely on the statements of the agent in relation to the subject-matter of the agency. The agent must make a full, fair, and prompt disclosure of all the circumstances affecting the principal's right or interests. These propositions do not require the citation of authority, but see [cases cited.]"

We are also referred to Popejoy v. Eastburn, 241 Iowa 747, 41 N.W.2d 764, also a case involving sale of real estate, where defendant grossly misrepresented the true facts to the property owners. Such is not the case here. As to the statement in Green v. Peeso, 92 Iowa 261, 60 N.W. 531, that the onus is on the agent to show that the bargain was fair and equitable, that case involved a purchase of the property by the agent himself, after fraudulently misrepresenting the value of the land. It is factually different. Careful review of the evidence here reveals no fraud, concealment, withholding of information, or disloyalty. At most this was a misunderstanding between the real-estate broker and its principal. We cannot attribute fault, if fault there be, for that misunderstanding anymore to Farmers National than to Mr. Miller.

Plaintiffs knew Farmers National was renting both properties at the same time. They also knew that the company was selling both parcels at the same time. The offers as corrected would normally be construed as a counter-offer which included the $2500 rent to be paid as part of the purchase price. Mr. Miller's letter of March 23 seems to be an acceptance of the offer as corrected. The result here is the same. If plaintiff expected an additional $2500 rent they had a duty to so indicate. Prior Iowa decisions hold that in the absence of an agreement to the contrary the purchaser receives all rent not yet due and payable.

"First Trust Joint Stock Land Bank v. Ogle, reported in 208 Iowa 15, 221 N.W. 537, Justice Kindig, speaking for the court, said:

" 'I. Conveyance of land passes all right, title and interest of the grantor therein, including the unaccrued rent of an attaching unexpired lease. Nelson v. Tracy, 184 Iowa 1118, 169 N.W. 442; Clark v. Strohbeen, 190 Iowa 989, 181 N.W. 430, 13 A. L. R. 1419; Hall v. Hall, 150 Iowa 277, 129 N.W. 960; Johnson v. Siedel, 178 Iowa 244, 159 N.W. 677. We said in Johnson v. Siedel, supra:

" ' "The authorities seem to hold that, without a special provision in the lease or by statute, rents are not apportioned in respect to time, so that the person who owns the reversion on the date the rent becomes due, is entitled to the entire rental matured that day." ' " First Trust Joint Stock Land Bank v. Ingels, 217 Iowa 705, 710, 251 N.W. 630.

IV. The phrase "Purchase subject to the lease and possession by Gerald Riedesel" in the offer does not help plaintiffs. The tenants had rights of possession and other lease rights to which the sale had to be subject. Both offers as originally made indicated that the total purchase price would include payment for the 1962 rent. The offer must be interpreted as a whole.

Plaintiffs place reliance on the court's orders approving the lease and the sale. We have examined these documents carefully. We cannot see how they aid plaintiffs. The order approving the sale says nothing about the sale being subject to the lease, collection or rent or any other exception. There is nothing to indicate that the probate court ordered that the sale price be collected in

addition to the expected 1962 rent.

What has been said here disposes of the prayer for exemplary damages, attorney fees and expenses which are denied. Therefore, the judgment of the trial court is—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.