UNITED STATES of America, Appellee,

v.

Roy Tibbals WILSON, et al., State of
Iowa, Appellant.

OMAHA INDIAN TRIBE, etc., Appellee,

v.

Harold JACKSON, et al., State of Iowa
and Iowa State Conservation
Commission, Appellants.

OMAHA INDIAN TRIBE, Appellee,

v.

AGRICULTURAL & INDUSTRIAL IN-
VESTMENT CO., et al., State of Iowa
and Iowa State Conservation Commis-
sion, Appellants.

UNITED STATES of America, Appellee,

v.

Roy Tibbals WILSON, et al., Appellants.

OMAHA INDIAN TRIBE, etc., Appellee,

v.

Harold JACKSON, et al., Appellants.

OMAHA INDIAN TRIBE, Appellee,

v.

AGRICULTURAL & INDUSTRIAL
INVESTMENT COMPANY, et al.

UNITED STATES of America, Appellee,

v.

Roy Tibbals WILSON, et al., RGP, Inc.
and Otis Peterson, Appellants.

OMAHA INDIAN TRIBE, etc., Appellee,

v.

Harold JACKSON, et al., Otis
Peterson, Appellants.

OMAHA INDIAN TRIBE, Appellee,

v.

AGRICULTURAL & INDUSTRIAL IN-
VESTMENT CO., et al., RGP, Inc.
and Otis Peterson, Appellants.

Nos. 81–2350, 81–2351 and 81–2384.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1982.

Decided Oct. 26, 1982.

Rehearing and Rehearing En Banc
Denied Dec. 1, 1982.

Opinion on Denial of Rehearing
June 10, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 11, 1983.

Carol E. Dinkins, Asst. Atty. Gen., James J. Clear, Martin Green, Attys. Dept. of Justice, Washington, D. C., for appellee.

Thomas J. Miller, Atty. Gen. of Iowa, Elizabeth M. Osenbaugh, John P. Sarcone, Asst. Attys. Gen., Des Moines, Iowa, for

appellants State of Iowa and Iowa State Conservation Com'n.

William H. Veeder, Washington, D. C., for Omaha Indian Tribe.

Robert J. Becker, Donald J. Buresh, Edson Smith, Swarr, May, Smith, Andersen & Jensen, Omaha, for Roy Tibbals Wilson, Charles Lakin, Florence Lakin and Harold Jackson.

Peter J. Peters, of Peter J. Peters, P. C., Council Bluffs, Iowa, for RGP, Inc. and Otis Peterson.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

LAY, Chief Judge.

The present controversy grows out of the overall litigation affecting ownership of 2900 acres of land contiguous to the Missouri River formerly occupied by the Omaha Indian Tribe (Tribe) as part of the Omaha Indian Reservation. The land is within an area called the Barrett Survey; it was reserved by the Tribe according to the terms of an 1854 Treaty whereby the Tribe ceded its lands west of the Missouri River to the United States. Treaty of March 16, 1854, art. 1, 10 Stat. 1043. The eastern boundary of the Reservation was the Missouri River. Commencing in 1879 the course of the erratic and uncontrolled river began changing in the Barrett Survey area, giving rise to this boundary dispute. The detailed facts of the dispute are fully set out in our earlier decisions. *Omaha Indian Tribe v. Wilson,* 575 F.2d 620 (8th Cir. 1978) (hereinafter referred to as *Omaha I*), *vacated and remanded,* 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979), and *Omaha Indian Tribe v. Wilson,* 614 F.2d 1153 (8th Cir.) (hereinafter referred to as *Omaha II*), *cert. denied,* 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980).

In *Omaha II,* we ordered title quieted in the Tribe and the United States as trustee for the Tribe to approximately 2200 of the 2900 acres involved in the controversy. The 2200 acres constituted reservation land held in trust by the United States, and claimed by individual landowners. Central to our holding was the applicability of 25 U.S.C. § 194,[1] which operated to shift the burden of proof from the Tribe and the United States to the individual landowners with respect to the trust lands. Left undecided in both *Omaha I* and *Omaha II* were the Tribe's claims to nontrust lands in the possession of the individual landowners until 1975 and to lands in the possession of the State of Iowa until 1975.

The State of Iowa acquired the land now in controversy by quitclaim deeds and by its sovereign ownership of islands and abandoned river channels. In *Omaha II,* following the earlier mandate of the United States Supreme Court, we remanded the claim regarding the State of Iowa's land because section 194 was deemed inapplicable to a sovereign state. 614 F.2d at 1161. The remainder of the land in controversy was patented in fee by the United States prior to 1940 and thus was not part of the trust lands. In *Omaha I* we noted the United States government had excepted from its complaint any claim to some 400 acres within the Barrett Survey that may have been allotted to individual Indians and subsequently patented to non-Indians. The Tribe's claim to this land was remanded to the district court at that time. 575 F.2d at 651 n.70.

In the district court's latest ruling,[2] title to the entire 2900 acres was quieted in the Omaha Indian Tribe and the United States as trustee for the Tribe. Appeal from this

---

1. 25 U.S.C. § 194 reads:

    In all trials about the right of property in which an Indian may be a party on one side, and a white person on the other, the burden of proof shall rest upon the white person, whenever the Indian shall make out a presumption of title in himself from the fact of previous possession or ownership.

2. *United States v. Wilson,* 523 F.Supp. 874 (N.D.Iowa 1981).

judgment has been taken by the State of Iowa and individual landowners asserting claims to some 700 acres of the land. The basic dispute on this appeal is the meaning of the Supreme Court's opinion as well as this court's earlier remands and directions.

In review of *Omaha I* the Supreme Court found that this court's application of section 194, which placed the burden of proof on the landowners rather than on the Tribe, was correct. On this basis in *Omaha I* and *Omaha II* we found under applicable federal law that the landowners failed to meet their burden of proof that the Missouri River movements at the critical times in issue had produced accretive lands to the Iowa bank of the Missouri River. We held the evidence of the landowners was speculative and conjectural regarding whether the river movement between 1879 and 1923 had changed by avulsive movements or by slow and imperceptible deposits of accretion to the Iowa bank as claimed by the landowners. On the basis of our initial conclusion that the Tribe had established legal title to the trust lands prior to the movements of the river in question, and had therefore established presumptive title under section 194, *Omaha I,* 575 F.2d at 631, we directed that title be quieted in the Tribe and the United States as trustee for the Tribe when the landowners failed to carry their burden of proof.

On remand of the Tribe's claims to the fee-patent lands and the State of Iowa's lands, the district court held that title to the entire 2900 acres, including the fee-patent lands and those claimed by the state, should be quieted in the Tribe and the United States as trustee. The district court, albeit reluctantly,[3] reasoned the "law of the case" (*Omaha II*) required quieting title to the trust land in the Tribe; that subsequent

to 1923 the river completely eroded and washed away all the fee-patent lands and State of Iowa lands, and that thereafter, when the river moved west again new land accreted to the trust land quieted in the Tribe in *Omaha II;* and further that the Tribe had proven the "new" land claimed by the State and the individual landowners had accreted to the Tribe's reservation land. The court reasoned that adverse possession and statutes of limitations were not valid affirmative defenses against the Tribe and the United States as trustee.

## I. *Tribe's Claim to State of Iowa Lands.*

■ Of the various issues raised on this appeal, we need focus only on the question of the burden of proof and the meaning of *Omaha II.* In the typical quiet title action, where a protective statute such as section 194 is not operative, the burden of proof is on the claimant, which here is the Tribe. The Supreme Court specifically ruled that the State as a sovereign was not affected by section 194 and that as to the original claim made by the Tribe, affecting state lands, the burden of proof remained on the Tribe.[4]

The fundamental question relates to the scope of that burden of proof. We have previously stated that the party bearing the burden of proof had the task of showing "whether the thalweg moved by accretion or avulsion in the critical time periods involved," *Omaha I,* 575 F.2d at 650; *see Omaha II,* 614 F.2d at 1156, 1161, and that the critical time periods were from 1879 to 1923, and post-1923. Here the Tribe claims land in the western portion of the Barrett Survey area. Plate I taken from the Tribe's brief depicts the areas in controversy.[5]

3. The district court, feeling the result inequitable, invited further constitutional attack on section 194. Cf. *Omaha I,* 575 F.2d at 631 n.18 (noting that constitutional attack is answered by *Morton v. Mancari,* 417 U.S. 535, 554–55, 94 S.Ct. 2474, 2484–85, 41 L.Ed.2d 290 (1974)).

4. Contrary to the government's suggestion, this court, as well as the Supreme Court, clearly held that section 194 placed the burden of *persuasion* on the landowners to show their title by reason of accretion to the Iowa bank.

5. The legend is that of Tribe's counsel and is not intended to reflect the court's ruling.

PLATE I

Abandoned Lands, Date of Last Title Transfer Prior to Entry of Missouri River Upon Said Lands

Lands Which Title Has Always Been in Omaha Tribe Since 1854

Allotted Lands Relinquished Back to Omaha Indian Tribe

IOWA

MONONA COUNTY

LANDS CLAIMED BY STATE OF IOWA

NEBRASKA

THURSTON COUNTY

PETERSON MAY 25, 1965 QUIT CLAIM DEED TO THE STATE OF IOWA N-8

ACCRETIONS TO OMAHA TRIBAL TRUST LANDS

OMAHA TRIBAL TRUST LANDS

IAKIN MAY 28, 1965 QUIT CLAIM DEED TO THE STATE OF IOWA M-8

BURT COUNTY

The district court in applying the law of *Omaha II* found that this court determined that the Tribe was the rightful owner of 2200 acres of the former reservation land. We did so, however, solely by reason that the landowners failed to carry their burden of proof. On this basis, we ruled that as against the individual defendants seeking to retain the trust lands under section 194 presumptive title remained in the Tribe.

It is tempting to follow the district court's line of reasoning and assume that these western lands accreted to the trust land and thus belong to the Tribe. However, we find that reasoning misleading because it allows the Tribe to bootstrap section 194 in asserting its claim against the state.

Our holding in *Omaha II* established the law of the case only between the litigants involved, to wit, the private landowners and the Tribe. Our holding could have no effect on the ongoing and simultaneous dispute between the State of Iowa and the Tribe because the Supreme Court held that the State was not a white person within the meaning of section 194. The State has from the commencement of the litigation denied the Tribe's assertive ownership to the entire land area within the Barrett Survey. Under the Supreme Court mandate, it is clear that for the Tribe to be successful against the State the entire controversy must be viewed as if section 194 had never been passed.[6] Thus, with regard to State lands the Tribe has the burden of proof to show that the earlier river movements be-

6. Our original holding against all the landowners, including the State of Iowa, was premised on the fact that both the State and the private landowners had failed to carry their burden of proof under section 194. This was error, since, as the Supreme Court ruled, section 194 does not apply to the Tribe's claim against the State.

tween 1879 and 1923 were avulsive changes, thus establishing no change of title in trust lands.

That we contemplated this burden of proof in *Omaha II* is indicated by the following passage, which we now realize was less than clearly stated:

> The record is not clear as to the time period and as to the specific land involved, in the Tribe's claim that land allegedly owned by the State was cut away from the reservation by avulsion. Under the circumstances, we feel the Tribe's case against the State should be separately remanded, and an opportunity given to ... point out specific evidence relied upon to show avulsion on the particular land claimed by the State.

614 F.2d at 1161 (footnote omitted).

On the basis of the above reasoning, we again remand to the district court the question of ownership of the land claimed both by the Tribe and by the State. The district court must evaluate the record as to the Tribe's claim to the land previously possessed by the State by placing the burden of proof on the Tribe to establish that the critical westward river movements from 1879 to 1923 were avulsive.[7]

## II. *Fee-Patented Lands.*

■ We now discuss the claim of the other landowners who, prior to the district court's issuance of the preliminary injunction, asserted title by adverse possession to lands once within the reservation, but di-

vested by the United States and the Tribe before the river movement began in 1879.[8]

■ The district court found that the landowners cannot claim this land under the guise that it is fee-patented land. The court found the fee-patented land was completely washed away by the post-1923 westward movement of the river. We deem this fact not significant. It is the *area of land* now occupied by the landowners that is important. *See Wilson v. Omaha Indian Tribe,* 442 U.S. at 668, 99 S.Ct. at 2538. This area of land is the same location where allotted lands existed because the Tribe and the United States divested the land from the reservation. Thus, the real significance is that this 400 acre area now claimed by the landowners, acknowledged to involve a separate claim in *Omaha I,* 575 F.2d at 651 n.70, is not trust land. It is not land in which the Tribe can claim that it is entitled to presumptive title by reason of section 194. Thus, as in the controversy involving the State, we deem it important that the Tribe must carry its burden of proof of rightful ownership as to this land. Because section 194 is not applicable to these 400 acres, it is clear that the burden of proof does not rest on the landowners.

The district court reasons, however, that because our mandate in *Omaha II* ordered it to quiet title to the 2200 acres in the Tribe, the law of the case is that the Tribe owned the trust land, and because it is undisputed that the 400 acres of fee-patent-

---

7. Although we indicated the landowners' proof was speculative whether the river moved by avulsion or accretion in both *Omaha I* and *Omaha II,* we did not assess the evidence in terms of whether the Tribe carried its burden of proof that there was avulsive movement to sustain the claim of the Tribe. This was not the issue. We acknowledge the district court originally held that the Tribe did not carry its overall burden that the river movements were by avulsion. We vacated that ruling because it erred in making the proper assessment of where the burden actually lay.

For the Tribe to be successful against the State, it must show the land east of the nonobliterated line (*see* Plate I) belongs to the Tribe by reason of the Tribe carrying its burden of proof that the river movements were by avul-

sion. This court's ruling that title was quieted in the Tribe affected only the claim to the trust lands east of the nonobliterated line. Insofar as the State's lands are involved in the same litigation our holding did not affect the State of Iowa.

8. The record is not clear as to which lands within the disputed 700 acres were divested by the Indian Tribe and the government and which were not. The Tribe contends some of the area was allotted land relinquished back to the Tribe. *See* Plate I. Assuming the Tribe can establish that land was relinquished back to the Tribe, if the land is not otherwise claimed by the State of Iowa, title to such relinquished land should be quieted in the Tribe, as trust land, as we ruled in *Omaha II.*

ed land accreted to the trust land by the post-1923 river movement, the Tribe is entitled to judgment. We find this reasoning is in error. The law of the case (*Omaha I* and *Omaha II*) is that the landowners failed to sustain the burden of proof placed on them pursuant to section 194, and therefore, as to the trust land, the Tribe was awarded presumptive title against those landowners. We did not hold that the Tribe established that the original boundary to the reservation remained unchanged by reason of avulsive river movements from 1879 to 1923, thereby establishing continuing ownership of the Tribe in the trust land. We deem such proof essential for the Tribe and the United States as trustee to establish their claim to the nontrust lands.[9]

The State and the private landowners have never disputed that the land west of the nonobliterated line (Plate I) was accretion land. Their contention has been that most of this land accreted to the Iowa bank since the reservation lands had been completely eroded away. Both the State of Iowa and the individual owners contend that the Tribe, to meet its burden of proof regarding the tracts of land now in controversy, must prove that the river moved westward over the eastern Barrett Survey land between 1867 and 1923 by avulsion; in other words, they argue the Tribe must establish affirmatively how the river moved during the entire period of time relevant to this lawsuit. As indicated, we agree.

■ This court's *Omaha II* decision established only that the private defendants had failed to meet their burden of proving how the river moved in the critical time periods. This court recognized that the necessary result of our decision that the landowners had failed to meet their burden was that when the district court entered final judgment, it would ultimately be required, by reason of section 194, to enter a decree quieting title to the trust land in the Tribe and the United States as trustee for the Tribe.[10]

However, this court's finding that the landowners failed to meet their burden of proof, and our recognition of the effect of that finding, did not establish that the Tribe had or would have carried the burden of proof showing that the original trust boundaries had not been altered. The latter holding would be an essential predicate for the Tribe to prove its claim to nontrust lands.

As we have discussed earlier, in regard to the lands claimed by the State, to hold otherwise would in effect give the Tribe the benefit of section 194 with respect to its claims to the State lands and the fee-patented lands, rather than only with respect to its claim to trust lands held by the private defendants. This result would clearly be unsupportable, and was not intended by our mandate in *Omaha II*. The Tribe cannot do indirectly what it cannot do directly.

We therefore remand this case to allow the district court to determine whether the Tribe has met its burden of proof as defined herein. If it holds that the Tribe failed to meet its burden, it must then determine whether the private defendants and the State of Iowa are entitled to have title to the tracts of land in controversy quieted in them.[11]

---

9. It is appropriate to mention here the off-quoted maxim that "in an action to quiet title the plaintiffs must rely upon the strength of their own title and not upon the weakness of that of the defendants." *Dudley v. Meyers,* 422 F.2d 1389, 1394–95 (3d Cir. 1970); *see also Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.,* 571 F.2d 1144, 1158 (10th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978).

10. The district court did not enter a judgment quieting title to the trust lands claimed by the private defendants in the Tribe and the United States until it entered a final judgment disposing of all claims of all parties to lands within the original Barrett Survey.

11. Defendants also appeal the district court's denial of their request for the value of improvements they made to Barrett Survey land during their possession of it. It is our understanding that the improvements were made solely on the particular tracts of land in controversy here, and not on the trust lands with respect to which this court has already indicated title must be quieted in the Tribe and the United States. If we are correct, then clearly we need not rule on this issue in view of our remand.

We recognize that requiring the Tribe to prove its underlying entitlement to the eastern trust lands to establish its right to the western portion of the Barrett Survey area may seem anomalous in view of *Omaha II,* in which this court has already concluded that title must be quieted in the Tribe to the eastern trust lands. This result is reached, however, as we pointed out above, because of the partial application of section 194 to this case. To hold otherwise would allow the Tribe to apply section 194 against the owners of the land held in fee and against the State of Iowa and would be inconsistent with our earlier mandate.

We also recognize that, because of the passage of time involved, the party having the burden of proof inevitably may face unsuperable barriers, and if the district court finds this to be so, the end result will be that the Tribe will prevail only as to the trust lands formerly in the possession of the private defendants, but not as to the remainder.

The judgment of the district court is reversed and the cause remanded for proceedings consistent with this opinion.

Rehearing and Rehearing En Banc Denied

ORDER

The petition for rehearing en banc is denied. The petition for rehearing by the panel is denied as to all issues, with the reservation that the issue raised by Wilson concerning improvements relating to trust lands shall be further briefed. The government and the Tribe are given 30 days in which to file a supplemental brief concerning the petition for rehearing by the panel on the improvement issue and the land owners are given 30 days thereafter in which to file a response. The briefs are to be limited to 20 pages in length.

The motion to modify the panel opinion filed by RGP, Inc., is granted to the extent that the words "that attached to land to the east" found on page 11 on the third line of the quoted sentence are stricken. The additional motion to modify by RGP, Inc. is overruled.

Judge Ross took no part in the consideration of the petition for rehearing en banc.

On Petitions For Rehearing

PER CURIAM.

Both sides have filed petitions for rehearing. Upon full consideration of the petitions and supplemental briefs, we adhere to our original opinion but delete footnote 11. We remand the case to the district court for further proceedings consistent with our modified opinion.

In their briefs on appeal, the landowners had urged that the district court erred in refusing to require the United States to reimburse them for the value of improvements made upon land within the Barrett Survey area during the time for the landowners' possession. In footnote 11, we stated:

It is our understanding that the improvements were made solely on the particular tracts of land in controversy here, and not on the trust lands with respect to which this court has already indicated title must be quieted in the Tribe and the United States. If we are correct, then clearly we need not rule on this issue in view of our remand.

In their petitions for rehearing, the landowners informed the court that improvements had been made on both trust and non-trust lands. Therefore, we will consider the improvements issue.

The landowners claimed in the district court that the obligation of the United States to reimburse them for the value of improvements was a condition precedent to its right to have title quieted. The district court rejected the landowners' argument, characterizing their claim as a counterclaim barred by the sovereign immunity of United States. *See United States v. Wilson,* 523 F.Supp. 874, 900–902 (W.D.Iowa 1981).

■ In a quiet title action where the plaintiff seeks the equitable remedy of a decree quieting title in himself, it is generally accepted that the plaintiff must do equity by reimbursing the defendant for the value of improvements as a condition precedent to his right to relief. *See, e.g., Goode v. Gaines,* 145 U.S. 141, 154–55, 12 S.Ct. 839, 841, 36 L.Ed. 654 (1891) [where

owner knew improvements were being constructed and acquiesced to construction]; *McAndrews v. Belknap*, 141 F.2d 111, 115 (6th Cir.), *cert. denied*, 323 U.S. 721, 65 S.Ct. 53, 89 L.Ed. 580 (1944); *Pendergrass v. Massengill*, 269 N.C. 364, 152 S.E.2d 657 (N.C.1967); *Scott v. Nygaard*, 241 Or. 347, 405 P.2d 850, 851 (Or.1965); *Simpson v. Bostwick*, 248 Iowa 238, 80 N.W.2d 339, 344 (Iowa 1957).

 We see no reason why on the facts of this case the United States should be excused from the application of this equitable doctrine. It is well established that the United States is subject to general principles of equity when seeking an equitable remedy. *Pan American Petroleum & Transport Co. v. United States*, 273 U.S. 456, 506, 47 S.Ct. 416, 424, 71 L.Ed. 734 (1927); *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 339, 26 S.Ct. 282, 288, 50 L.Ed. 499 (1906); *United States v. Second National Bank of North Miami*, 502 F.2d 535, 548 (5th Cir.1974); *Sierra Club v. Hickel*, 467 F.2d 1048, 1052 (6th Cir.1972), *cert. denied*, 411 U.S. 920, 93 S.Ct. 1545, 36 L.Ed.2d 313 (1973).

 We hold, as did the court in *United States v. Bedford Associates*, 618 F.2d 904, 920 (2d Cir.1980), that "when the government invokes the equity powers of the district court, that court has the power to withhold the relief requested unless the government performs the conditions precedent to its claim." This principle is further supported by decisions of the Fourth, Fifth and Ninth Circuits. *See United States v. Desert Gold Mining Co.*, 448 F.2d 1230, 1231 (9th Cir.1971); *Ehrlich v. United States*, 252 F.2d 772, 776 (5th Cir.1958); *Lacy v. United States*, 216 F.2d 223, 225 (5th Cir.1954); *Jacobs v. United States*, 239 F.2d 459, 461–62 (4th Cir.1956), *cert. denied*, 353 U.S. 904, 77 S.Ct. 666, 1 L.Ed. 666 (1957); *Martin v.*

*United States*, 240 F.2d 326 (4th Cir.1957), *on remand*, 162 F.Supp. 932 (M.D.N.C.1958) *aff'd in part, rev'd in part*, 270 F.2d 65 (4th Cir.1959).

 Because the duty to pay for the value of improvements is an element of the government's own claim, a condition precedent to the right of the United States to recover, we find the doctrine of sovereign immunity is inapplicable. The duty of the United States to pay for the value of improvements, upon a proper showing of entitlement by the landowners, does not arise as a result of finding adverse to it on a counterclaim by the defendants.

 We therefore hold that the district court erred in characterizing the landowner's claim as a counterclaim barred by the doctrine of sovereign immunity, and remand for the district court to determine whether, under the applicable principles of law, the United States should be ordered to reimburse the landowners for the value of improvements and if so, in what amounts.[1]

---

1. It is "well settled that the court may finally determine as between the parties in a quiet title action all of the conflicting claims regarding any estate or interest in the property." *Hendershott v. Shipman*, 37 Cal.2d 190, 231 P.2d 481, 483 (Cal.1951). *Cf. Bjornstad v. Fish*, 249 Iowa 269, 87 N.W.2d 1, 8 (Iowa 1957). The United States has heretofore made no claim for recovery of rents and profits. However, the

Tribe brought an action for ejectment and for trespass damages, which was severed. We urge the parties and the district court to consider consolidation of all remaining claims arising out of the possession or lack of possession of the Barrett Survey area during the period in controversy, so that the claims may be resolved in the most judicially efficient manner.