**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leon TAUNAH, deceased, the unknown
heirs, executors, administrators, devi-
sees, trustees and assigns, immediate
and remote, of said Leon Taunah, de-
ceased, Freida Taunah, Malcolm Clar-
ence Taunah, and Lebert Taunah, De-
fendants-Appellants.**

**No. 83–1533.**

United States Court of Appeals,
Tenth Circuit.

March 26, 1984.

James M. Peters and Houston Bus Hill, Oklahoma City, Okl., for defendants-appellants.

F. Henry Habicht, II, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D.C., William S. Price, U.S. Atty., John E. Green, First Asst. U.S. Atty., Oklahoma City, Okl., Jacques B. Gelin and Kathleen P. Dewey, Attorneys, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before SETH, Chief Judge, and BREIT-ENSTEIN and McWILLIAMS, Circuit Judges.

SETH, Chief Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir. R. 10(e). This cause is therefore ordered submitted without oral argument.

This is an appeal from a district court decree quieting title in the United States on behalf of the heirs of Elgin Red Elk. The property in dispute is a tract of land in Cotton County, Oklahoma which had been purchased by Flora Taunah, a Comanche allottee, in 1949. In later proceedings proof was brought forward that Mrs. Taunah bought the property with oil royalties from restricted lands. The deed to her contained a provision that the land could not be alienated without the consent of the Secretary of the Interior.

When Mrs. Taunah died in 1954 this land and all her property went to Elgin Red Elk, her son. During the probate of the will he entered into a settlement agreement (1954 Family Settlement Contract) with Mrs. Taunah's husband and her other children whereby her son, Leon Taunah, would receive the disputed tract of land. This settlement was not presented in the probate proceedings, and the will was probated in accordance with its terms. Thereafter Elgin Red Elk and his wife, Roberta Red Elk, executed and delivered a deed transferring the tract to Leon Taunah pursuant to the

Family Settlement Contract. The deed was recorded.

When Elgin Red Elk died intestate, the Taunahs presented their claim of ownership of the tract to the Examiner of Inheritance but he did not approve the 1954 settlement. An appeal taken to the Secretary of the Interior was denied. A proceeding was started in the United States District Court and the administrative position was set aside and the Secretary was ordered to approve the settlement. This court set aside the district court judgment and remanded the case with directions to stay the court proceedings while the Taunahs instituted the appropriate administrative proceedings.

An administrative hearing was had to determine whether the Family Settlement Contract of 1954 should be approved. The issue before the hearing examiner was narrowed to the question of the rights of the parties to the oil royalty income from restricted property which belonged to Flora Taunah. After the hearing, but before the examiner rendered his decision, the parties entered into the 1971 Settlement Agreement regarding the oil royalty income. This contained broad language as to waiver of claims of the Taunahs. This agreement was approved by the Secretary.

It appears from the language of the 1954 Family Settlement Contract and the subsequent Settlement Agreement and the negotiations that the family members believed the real estate in question to be non-restricted property. As mentioned, the Government in the most recent proceedings proved that the check by which Mrs. Taunah purchased the property was a Treasury check on her funds accumulated from oil royalties. Also, as indicated, the deed to her contained a restriction on alienation. Thus, although the understanding of at least some of the family members may have been to the contrary, the land was Mrs. Taunah's restricted property.

It appears from the evidence that Mrs. Taunah bought the land for her son, Leon Taunah, as a place where he and his wife could build a home. The son did so take possession of the property the year it was purchased and built a house on it which he and his wife have since occupied.

The 1971 Settlement Agreement entered into while the Taunahs were pursuing administrative remedies on remand from this court arose in the context only of the oil royalties from Mrs. Taunah's restricted lands. However, a waiver paragraph in the agreement contained language broad enough to cover the dispute over the tract in question, and it was agreed to dismiss the then pending proceedings in the United States District Court. This 1971 agreement must be considered to be effective to terminate the title dispute as to the land in which the United States here seeks to quiet title for the Red Elk heirs—the E/2 of the NE/4, Section 3, Township 4 South, Range 10 West, in Cotton County, Oklahoma.

The United States brought this quiet title suit and the administrative proceedings were conducted on the theory that the 1954 Family Settlement Contract was not approved by the Secretary of Interior nor were the deeds executed and delivered to carry out the agreement so approved. The land was determined to be restricted at some time during the latter part of the proceedings. Thus the Government's position that the land could not be alienated without the Secretary's approval was established.

It is, however, equally clear that the family members all agreed that their mother's property be divided in a manner whereby Leon Taunah would obtain title to the land in question. Deeds were executed and delivered to accomplish this. There was also testimony that the mother bought the land to provide a place for the home of her son, Leon Taunah, and his wife.

The application by the Government of the non-approval rule is to frustrate an executed agreement among family members only, among the children of the decedent. The agreement is further "executed" in the sense that the Taunahs have lived on the land since shortly after the mother's death. It appears that the Government in this action loses sight of the

fact that this is a disagreement among family members only wherein the Government has brought this suit on behalf of one of the family groups. Since it initiated the action it therein asserts the doctrine of sovereign immunity to foreclose the claims for equitable relief by that portion of the family it named as defendants. It is difficult to see in these circumstances why the doctrine should be applied against this counterclaim. The basic disagreement is obviously within the family. The relief sought is to vest title in some family members against others. The result as to title is obviously contrary to the initial understanding and intent of the family members which was relied on by the Taunahs who went into possession in 1949 and built their home. In our view they are entitled to equitable relief which would be afforded a defendant in similar proceedings. This is a title action and the decree correctly vests title in the Red Elk heirs. The defendants, however, are entitled to a lien on the land the subject of the suit as part of the quiet title decree. *See* our holding in *United States v. Martin*, 267 F.2d 764 (10th Cir.). We there said in part:

> "From this it may be fairly said that when the United States institutes a suit, it thereby consents by implication to the full and complete adjudication of all matters and issues which are reasonably incident thereto. And, in such role, it 'subjects itself to the procedure and rules of decision governing the forum which it has sought.' *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 134, 58 S.Ct. 785, 789, 82 L.Ed. 1224. We think it may also be said that a litigable interest which is or may be germane to the government-instituted suit, and which may be adversely affected by a judgment therein, is reasonably incident to the relief sought, and therefore is within the rule of consent by implication. It would seem, therefore, that a counterclaim which meets the requirements of Rule 24(a)(2) would likewise come within the consent by implication rule, hence cognizable in suits of that kind."

The Eighth Circuit in *United States v. Wilson*, 707 F.2d 304, where the United States brought suit on behalf of an Indian tribe to quiet title, held that payment for improvements on the land in issue had to be repaid as a condition to quieting title. *See also United States v. Detroit Timber and Lumber Co.*, 200 U.S. 321, 26 S.Ct. 282, 50 L.Ed. 499.

The Government urges that the sovereign immunity issue is controlled by *Heckman v. United States*, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820, where the action was to set aside a conveyance of restricted land. The purchaser sought a refund as the deed was to be set aside. The Court denied the buyer relief and said in part:

> "Where, however, conveyance has been made in violation of the restrictions, it is plain that the return of the consideration cannot be regarded as an essential prerequisite to a decree of cancellation."

The factual situation before us is quite different as we have outlined above. This is no more nor less than a family dispute. The Government chose one side and sues on behalf of that side. The real plaintiff is not the United States, but one group of heirs. We see no reason why the small exception to the immunity doctrine should not be applied to permit the counterclaim to be asserted as a lien and so not to venture outside the subject of the original cause of action.

The judgment of the trial court insofar as it denied relief on the counterclaim is set aside and the case is remanded for further proceedings. IT IS SO ORDERED.